[Crim. No. 3266. Second Appellate District, Division Two.—May 31, 1940.]

THE PEOPLE, Respondent, v. S. KINOWAKI et al., Appellants.

Jerry Giesler, Ward Sullivan and K. Doi for Appellants.

Earl Warren, Attorney-General, Burdette J. Daniels, Deputy Attorney-General, Buron Fitts, District Attorney, and Thomas F. O'Brien, Deputy District Attorney, for Respondent.

WOOD, J.—Defendants were charged in count I of the information with the crime of murder and in count II with the crime of assault with a deadly weapon with intent to commit murder. A jury found them guilty of manslaughter and not guilty of the charge contained in count II. They prosecute the present appeal from the judgments of conviction and from the orders denying their motions for a new trial.

At about 9:00 o'clock P. M. on May 21, 1938, Teruhiko Namba entered the gambling establishment in Los Angeles of which defendant Yamatoda was manager. A fight then occurred which, according to the charges of the prosecution, resulted in the death of Namba. Defendants claim that the testimony is not sufficient to establish that Namba was killed

and that in any event their actions were justified on the ground of self-defense.

The record discloses a very decided conflict in the testimony presented by the parties. On behalf of the prosecution witnesses testified that Namba, who apparently was a stranger from Campo, California, went to the gambling establishment and, approaching Yamatoda, hit him on the back and said "Hey!". Yamatoda pulled Namba into an office adjoining the gambling room and a fight immediately ensued in which the defendants, Namba and others took part. Several witnesses testified for the prosecution concerning the events that took place during the altercation. From their testimony it appears that as many as five men were kicking Namba as he lay upon the floor. Defendant Kinowaki beat Namba on the back with a billiard cue, defendant Inoye beat him with a chair and Yamatoda "stamped on his chest" after he had fallen to the floor. One witness saw a pistol in the hand of Yamatoda but did not see a pistol in Namba's hand. One of the witnesses attempted to stop defendants from beating Namba but Yamatoda told him to "get out". A witness upon being asked as to the appearance of Namba said, "he was dead". An objection was interposed by the defense and the court asked, "you mean that is the way Namba appeared to you?" and the witness replied, "I saw him as he was dead". A witness testified that a short time later Inoye and Kinowaki and three other men carried Namba out and that "there was something wrapped around him".

The wife of Namba testified that she last saw him at their home in Campo on May 12, 1938, on which date he left in a Dodge truck. She received a letter from him dated May 19, 1938. On his arrival in Los Angeles Namba registered at the Mikado Hotel, where a suit-case and clothing identified as belonging to him were later found. A thorough search for Namba was made by his brother at various institutions and advertisements were placed in newspapers but no trace of him has been found. Namba's truck was located by his brother in a garage in Los Angeles.

Defendant Yamatoda testified that he was seated in the gambling establishment when Namba, who was a stranger to him, approached and struck him on the chest and asked, "is this the boss?" Namba pushed a gun against his stomach but Yamatoda, according to his testimony, grabbed at his wrist

and pushed the gun aside. One Ishihari came over and helped the witness subdue Namba and called for help. Thereupon others, including defendants Inoye and Kinowaki, helped in subduing him. After Namba had been subdued one Tominaga took his gun and placed it on a desk. Thereupon one Shida brought a rope and Kinowaki and Tominaga tied Namba's arms. Yamatoda then told Tominaga and Kinowaki to take Namba aside and talk to him. Yamatoda denied striking him or stamping on his chest. Yamatoda's testimony, as above outlined, was corroborated by other defense witnesses, including his two co-defendants, who denied beating Namba. Kinowaki testified that he and Tominaga at the request of Yamatoda took Namba to a room on a lower floor, Namba walking unassisted; that after he had rested about five minutes they requested him to leave and he "walked out alone".

Defendants contend that the court erred to their prejudice in refusing to give to the jury the following instruction: "The court instructs the jury that a person in the exercise of his right of self-defense not only has a right to stand his ground and defend himself when attacked, but he may pursue his adversary until he has secured himself from danger." This contention must be sustained. In *People* v. *Hecker*, 109 Cal. 451, 467 [42 Pac. 307, 30 L. R. A. 403], it is stated: "The right to stand one's ground should form an element of the instructions upon the necessity of killing and the law of self-defense." In *People* v. *Newcomer*, 118 Cal. 263, 273 [50 Pac. 405], it is held that, "when a man without fault himself is suddenly attacked in a way that puts life or bodily safety at imminent hazard, he is not compelled to fly or to consider the proposition of flying, but may stand his ground and defend himself to the extent of taking the life of the assailant, if that be reasonably necessary". In *People* v. *Orosco*, 73 Cal. App. 580 [239 Pac. 82], the same instruction that is now under consideration was under review and it was held that it was prejudicially erroneous to refuse to give it. In that case the court instructed the jury that the party assailed had "the right to repel force by force" and that he might defend himself from the apprehended danger "to any extent which to him is apparently necessary, acting in a reasonable manner". The reviewing court held that the giving of the last mentioned instructions did not suffice, since the principle of the refused instruction was not in fact given to

the jury. In the instant case the requested instruction was applicable to the testimony given by the witnesses for the defense, and in view of the marked conflict in the testimony of the various witnesses, it cannot be held that defendants were not prejudiced by the failure of the court to give it. The doctrine of the rejected instruction was not covered in any of the instructions actually given by the court. The instructions held insufficient in *People* v. *Orosco, supra,* more nearly approached the principle of the instruction under review than any of the instructions given in the present case.

The trial court also erred in refusing to instruct the jury at the request of defendants that where circumstantial evidence is relied upon, the circumstances must be consistent with the hypothesis that the defendants are guilty and at the same time inconsistent with any other rational conclusion. Neither the proposed instruction nor its equivalent was given by the court. In *People* v. *McClain,* 115 Cal. App. 505 [1 Pac. (2d) 1085], it was held to be reversible error to refuse to give an instruction on the point covered by the instruction requested by defendants. In *People* v. *Heuss,* 95 Cal. App. 680, 684 [273 Pac. 583], the Supreme Court, in denying the petition for a hearing withheld its approval of the action of the trial court in refusing to give an instruction on circumstantial evidence which ''fell short in not including the well approved and frequently announced statement of the law that the evidence adduced must not only be consistent with guilt, but 'inconsistent with innocence', in order to justify a verdict of guilty''. In the case now under review the prosecution relied upon circumstantial evidence to establish the death of Namba.

Defendants contend that the trial court invaded the province of the jury in giving the following instruction: ''The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the person named in the information as Teruhiko Namba was the person killed by the defendant, as charged in the information, then it is immaterial whether such deceased in his lifetime went by or was known by any other name or not, or whether his full name was Teruhiko Namba or not''. The same complaint is made of the giving of the following instruction: ''The court instructs the jury that the acts which a defendant may do and justify under a plea of self-defense depend primarily upon his

own conduct and secondarily upon the conduct of the deceased Teruhiko Namba''.

The trial court erred in thus referring to Namba. From the language used in the first instruction above quoted the jury could naturally infer that the court was of the opinion that Namba was a ''person killed''; and in the other instruction Namba is referred to as ''the deceased''. No qualification appears in either instruction by which the jury were told that it was for them to determine whether or not Namba had in fact been killed. It is vigorously contended by defendants, with the support of substantial evidence, that Namba walked away from the gambling establishment. It is argued that the jury should have found that the prosecution had not proved the death of Namba beyond a reasonable doubt. Undoubtedly the question whether Namba is dead or alive was for the determination of the jury, and it is manifest that defendants cannot be guilty of manslaughter if he yet lives. This issue should have been given to the jury uninfluenced by any expression of the court from which it could be inferred that the court considered the death of Namba established by the evidence. As stated in *People* v. *Williams*, 17 Cal. 142, 147, the court ''should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression''. Where there is a conflict in the evidence any assumption of a fact in dispute which must be found by the jury is an infringement of their province. (*People* v. *Messersmith*, 61 Cal. 246.)

The judgments and the orders denying the motions for a new trial are reversed and a new trial is ordered.

Moore, P. J., and McComb, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1940. Curtis, J., voted for a hearing.