[Crim. No. 3803.   Second Dist., Div. Three.   Aug. 9, 1944.]

THE PEOPLE, Respondent, v. KATHERINE RAYOL, Appellant.

Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

FOX, J. pro tem.—Defendant was charged by an information with a violation of section 288a of the Penal Code. A jury trial resulted in a verdict of guilty. She appeals from the order denying her motion for a new trial.

At about six o'clock in the evening of October 19, 1943, defendant went to a certain cafe and cocktail bar in the city of Los Angeles. When she went there she had twenty-five dollars. During the evening she spent it all but one dollar, buying drinks for herself and the service men who came up to the bar. She left there in a taxi at twelve o'clock with an Army officer whose face she had slapped earlier in the evening because he had said something dirty to her. One of the waitresses testified that she observed defendant sitting at the end of the bar from 9:30 until 12:00 o'clock and that she con-

stantly had a drink in front of her. It was stipulated that two other employees, if called as witnesses, would testify that they observed defendant before the place closed and that she was "very drunk." She was taken by the Army officer to his hotel room. There, police officers who had followed them to the hotel, observed from an adjoining roof the Army officer commit upon the person of defendant the acts outlawed by section 288a, Penal Code. Defendant testified she had a faint memory of leaving the bar but no recollection of meeting the Army officer nor of slapping his face while at the bar. Aside from a hazy memory of some men dressing her and being in a car, she said she remembered nothing that occurred from the time she left the bar until she awoke in Lincoln Heights jail.

Defendant's position is that she was completely unaware of the acts committed on her by the Army officer—that she was not a conscious, willing, participant in the acts which occurred in his hotel room. This theory of defendant's case was presented to the jury in an instruction that they should find defendant not guilty unless they were convinced by the evidence beyond a reasonable doubt that the defendant "knowingly" participated in the unlawful act. But, defendant argues, the jury had to depend entirely on circumstantial evidence to determine whether or not she "knowingly" participated in the act and they were inadequately instructed on this phase of the case. This contention is well taken.

The following instructions as to circumstantial evidence were given: "There are two classes of evidence recognized and admitted in courts of justice, upon either of which juries may lawfully find an accused guilty of crime. One is direct evidence, which is the direct testimony of any eyewitness to a transaction, and the other is circumstantial evidence, which includes all evidence other than that of an eyewitness. Such evidence may consist of any acts, declarations or circumstances admitted in evidence tending to prove the crime charged or tending to connect the defendant with the commission of the crime.

"If upon consideration of the whole case you are satisfied to a moral certainty and beyond a reasonable doubt of the guilt of the defendant, you should so find, irrespective of whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction

between circumstantial evidence and direct evidence in the degree of proof required for conviction but only requires that the jury shall be satisfied beyond a reasonable doubt by evidence of either the one character or the other, or both.''

''If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

''You will notice that, in this instruction, this rule of law is made applicable to cases in which there are two opposing interpretations, each of which appears to you to be reasonable.

''This rule of law does not apply in a case where there are two opposing constructions sought to be placed upon the evidence, one of which appears to you to be reasonable and the other to you appears to be unreasonable.

''In the latter case it would be your duty, under the law, to adopt the reasonable construction and reject the one which, in your judgment, appears to be unreasonable.''

These instructions are identical with those considered by this court in *People* v. *Hatchett* (1944), 63 Cal.App.2d 144 [146 P.2d 469]. They were there fully analyzed, and their insufficiency, where the conviction rests on circumstantial evidence, logically demonstrated. In holding that these instructions were not a sufficient statement of the law on this subject, Mr. Justice Shinn said (p. 155): ''To the legally trained mind the doctrine of reasonable doubt has a scope much broader than would be easily understood by inexperienced jurors. The rule under which circumstantial evidence is to be weighed is not one which would be suggested to the lay mind by instructions that doubts are to be resolved in favor of the accused. This is sufficiently proved by the fact that through long experience it has become an established practice in the courts to state the rule in distinct and specific form, to serve as an easily understood and safe guide for juries in weighing the sufficiency of circumstantial evidence. Simplicity in the statement of legal principles adds greatly to their efficacy; statements of abstract principles which leave the jury in doubt as to their proper application tend toward

confusion. Neither the statement in an instruction that the guilt of the defendant must be established beyond a reasonable doubt, nor the statement that as between two opposing reasonable inferences the one which is consistent with innocence must be preferred to the one tending to show guilt, satisfies the right of the defendant to have the jury instructed that where circumstantial evidence is relied upon by the People it must be irreconcilable with the theory of innocence in order to furnish a sound basis for conviction." In order to satisfy this "right of the defendant" the court should have given (with, perhaps, some slight modification) the following instruction proposed by her counsel: "With respect to circumstantial evidence the jury must not only be satisfied beyond a reasonable doubt that all the circumstances proved are consistent with the defendant having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is the guilty person. If there is any one single fact proved to the satisfaction of the jury by a preponderance of the evidence, which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt and the jury should acquit the defendant." (See opinion of the Supreme Court in denying a hearing in *People* v. *Heuss* (1928), 95 Cal.App. 680, 684 [273 P. 583]; *People* v. *McClain* (1931), 115 Cal. App. 505, 510-512 [1 P.2d 1085]; *People* v. *Kinowaki* (1939), 39 Cal.App.2d 376, 380 [103 P.2d 203].)

■ Counsel for the People seek to minimize the part circumstantial evidence played in the conviction of defendant. They point out that "two police officers looked on while the alleged immoral act was being perpetrated. There was no circumstantial evidence there," they say. Of course the evidence of the police officers as to the physical acts that occurred between the defendant and the Army officer was direct evidence but the question of whether the defendant was or was not a knowing participant in those acts rested entirely on circumstantial evidence—inferences to be drawn from the facts proved. (Code Civ. Proc., §§ 1831, 1832; *Morton* v. *Manhattan Lunch Co.* (1940), 41 Cal.App.2d 70, 72 [106 P.2d 212]; *Hatfield* v. *Levy Brothers* (1941), 18 Cal.2d 798, 805 [117 P.2d 841].) A portion of the police officers' testimony as to what happened between these parties in the hotel room is such that

the jury might reasonably have drawn the inference that the defendant was not a knowing participant in the alleged immoral act, but a mere automaton.

The order denying defendant's motion for a new trial is reversed.

Desmond, P. J., and Wood (Parker), J., concurred.