[Crim. No. 2396.  First Dist., Div. Two.  Aug. 29, 1946.]

THE PEOPLE, Respondent, v. EDWARD THOLKE,
Appellant.

Archer Zamloch for Appellant.

Robert W. Kenny, Attorney General, David K. Lener and Dennis Hession, Deputies Attorney General, Edmund G. Brown, District Attorney, and Alvin E. Weinberger, Assistant District Attorney, for Respondent.

GOODELL, J.—This appeal is from a judgment of conviction of first degree burglary and from an order denying a new trial.

On August 23, 1945, the premises of Stewart Chevrolet Company on Mission Street near 29th in San Francisco, were burglarized.  The store runs through to Valencia Street, the showroom being on the Mission Street end and the service shop being in the rear, with an entrance on Valencia.

About 11:55 p. m. a special policeman, making his rounds, entered from Mission Street and heard a loud, metallic noise

inside. On switching on the lights he saw that a drill had been inserted in the office safe in the aperture from which the combination dial had been removed. The metallic noise was followed by the sound of breaking glass. He searched the place but found nobody.

About 11:55 p. m. the attention of a telephone operator leaving St. Luke's Hospital (directly opposite the Stewart Chevrolet entrance on Valencia) was attracted by breaking glass, and she saw two men within the premises smash their way out through a plate glass window. They walked southerly on Valencia at a fast pace, broke into a run, and disappeared from her view behind a double-faced, illuminated billboard. On direct examination she testified that one of the men was of medium height, the other a head taller. On cross-examination she was not positive as to their height, and did not identify either man.

The attention of a pedestrian was likewise attracted by breaking glass and he, too, saw two men walking southerly on Valencia at a fast pace. They passed within 20 feet of him near the illuminated billboard and he positively identified the appellant (whose height is 6 feet 4 inches) as the taller of the two. They ran up Tiffany Avenue and disappeared into a vacant lot near an apartment house. Soon thereafter this witness, who had followed them to the front of the apartment house, saw a flash and heard what apparently was a gunshot. The direction from which this sound came is not clear. No witness saw any gun fired at this time.

Another special officer, attached to St. Luke's Hospital, heard the breaking glass and went up to the apartment house and waited in front. He, too, heard the shot.

A witness living in the apartment house returned home about 11:55 and drove into the garage in the rear. As he turned off his lights two men, one of whom he identified as the appellant, demanded the keys to his car. Instead of yielding them up he ran into the house.

Presently the appellant came out from between the apartment house and the next house and was confronted by the waiting officer who, gun in hand, ordered "hands up." Appellant did not obey, and after some temporizing the officer shot him through the leg. The other man was not seen further, and apparently was never apprehended.

Appellant at all times denied having taken any part in the burglary. He testified that he had been drinking heavily

during the afternoon and evening and that he was intoxicated. The arresting officer and the doctor at the emergency hospital testified that he was sober. Appellant accounted for his presence near the scene of the crime by saying he had been out to the Glen Park district and was walking home when he ran into this "commotion" on Tiffany Avenue where he says he, too, saw men running, and where, also, he says he heard the report of a gun.

The appellant contends that the evidence is insufficient to support the verdict and that the court erred in failing to give the jury any instructions on circumstantial evidence.

The entry was proved by a broken window in the side of the building; footmarks in the dust and oil at the oil pumps; the drill in the safe; the metallic sounds heard by the officer —all circumstantial evidence showing an entry by *somebody*. There was also direct evidence of entry, for the telephone operator on leaving the hospital saw two men inside the building making their exit through the window. No other witness saw this. The intent to steal was inferable from the condition of the safe. So much for the proof of the elements of the offense.

The telephone operator's eyewitness testimony, however, did not connect the appellant with the crime, for on cross-examination she "couldn't identify them positively." The pedestrian who identified the appellant as the taller of the two men hurrying south on Valencia, did not see them in the store or their exit therefrom. His evidence was circumstantial for it simply placed appellant near the scene of the crime, apparently in flight.

Moreover, no gun was found on appellant, hence the only evidence upon which a finding of *first degree* burglary could have been based was the flash and the report, from which the jury must have drawn the inferences 1st, that it was the discharge of a gun; 2d, that the gun was discharged by appellant or his companion, and 3d, that if they had a gun at that time they must have been "armed with a deadly weapon" while in the store. This of course was nothing but circumstantial evidence.

From what has been said it is clear that the case substantially, and for the most part, was proved by circumstantial evidence.

No instruction whatever was given on the subject of circumstantial evidence. The appellant, however, tendered and requested the following instructions, which the court refused:

"The prosecution in this case has relied upon circumstantial evidence in its effort to prove defendant guilty as charged.

"Circumstantial evidence is indirect evidence. It is evidence which tends to establish the fact in dispute by proving another, and which, even if taken as true, does not of itself conclusively establish the facts in dispute, but which affords an inference or presumption of its existence.

"Where circumstantial evidence is relied upon by the prosecution, it must not only be consistent with the hypothesis of guilt, but inconsistent with any other rational hypothesis."

In *People* v. *Warren,* 16 Cal.2d 103, 116-117 [104 P.2d 1024], the court quoted 8 California Jurisprudence 309 as follows, " 'It is the duty of a court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, where they are not proposed or presented in writing by the parties themselves. . . .' " In *People* v. *Bender,* 27 Cal.2d. 164, 175 [163 P.2d 8], after quoting this the court added, "In a criminal case where circumstantial evidence is susbstantially relied upon for proof of guilt it is obvious that 'instructions on the general principles of law pertinent to such cases' necessarily include adequate instructions on the rules governing the application of such evidence."

Further, it has been settled ever since *People* v. *Dick,* 32 Cal. 213, that, as stated in 8 California Jurisprudence, 371, "When a case is one of circumstantial evidence, and admits of a theory either of guilt or innocence, the defendant is entitled to an instruction embodying the rule that, to justify a conviction, the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion. . . ." In *People* v. *Mc-Clain,* 115 Cal.App. 505, 510 [1 P.2d 1085], and *People* v. *Rayol,* 65 Cal.App.2d 462 [150 P.2d 812], the refusal of an instruction embodying that rule was held to be reversible error. The McClain case was followed in *People* v. *Kinowaki,* 39 Cal.App.2d 376, 380 [103 P.2d 203], and in *People* v. *Hatchett,* 63 Cal.App.2d 144, 153 [146 P.2d 469]. Both the Hachett and Rayol cases are cited approvingly in *People* v. *Bender, supra.* (See, also, *People* v. *Chenault,* 74 Cal.App. 2d 487, 497 [169 P.2d 29].) The Supreme Court in denying

a hearing in *People* v. *Heuss,* 95 Cal.App. 680, 684 [273 P. 583] reaffirmed the rule.

The tendered instruction that circumstantial evidence ''must not only be consistent with the hypothesis of guilt, but inconsistent with any other rational hypothesis'' was phrased in substantially the language approved by the authorities. Whatever might be said of the other evidence, that with respect to the flash and the report was purely circumstantial. It was that alone on which the jury must have based its finding of first degree burglary, for the place was not an inhabited dwelling-house or building and there was no assault (Pen. Code, § 460; *People* v. *Clinton,* 70 Cal.App. 262, 264 [233 P. 78]). The appellant was entitled to have the jury instructed to apply that rule to this, as well as to the other, circumstantial evidence.

We cannot agree with the state when it claims that ''The prosecution did not rely solely *or* chiefly upon circumstantial evidence to prove its case.''

It is not necessary to review the authorities cited by the state for they are all cases (e. g. *People* v. *Hannon,* 44 Cal. App.2d 484, 490 [112 P.2d 719]) where the evidence was either ''basically direct and positive, and not circumstantial'' or the circumstantial evidence was merely cumulative or corroborative of direct evidence—at any rate not of any considerable consequence. In such cases instructions on circumstantial evidence need not be given (8 Cal.Jur. 369).

Because the rejected instructions were requested by the appellant, it is not necessary to decide whether similar instructions should have been given anyway, *sua sponte* (see earlier quotations from the Warren and Bender cases).

Nor is it necessary to pass upon the claimed insufficiency of the evidence. The foregoing discussion assumes its sufficiency.

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Nourse, P. J., and Dooling, J., concurred.