[Crim. No. 4714. In Bank. Sept. 30, 1946.]

THE PEOPLE, Respondent, v. DONALD EDGAR KOENIG
et al., Defendants; WILLIAM RICHTER, Appellant.

Leola Buck Kellogg and Montgomery G. Rice for Appellant.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendants William Richter, Donald Koenig and Ralph Hagenios were jointly charged with two counts of robbery while armed with a revolver. Defendant Hagenios pleaded guilty. Appellant Richter and defendant Koenig were tried by a jury and convicted. They appealed from the judgment and from orders denying their motions for a new trial. Koenig failed to perfect his appeal, and it was dismissed.

Shortly after midnight of May 21, 1944, defendant Hagenios, armed with a .38 caliber revolver, entered a cafe in West Los Angeles and robbed the proprietor and a customer who was cashing a pay check. According to the testimony of a witness, Hagenios escaped from the scene in a green con-

vertible car, which was immediately driven away as he stepped into it from the right side. This witness was unable to see the driver of the car. There was no eyewitness testimony at the trial linking appellant Richter with the robbery.

Richter and Hagenios were employed by the Veterans Administration in West Los Angeles, Richter was chief cook, and Hagenios worked under his supervision. The proprietor of the restaurant had been cashing pay checks for 10 years and kept money on hand for this purpose. Two years before the robbery appellant had lived next door to this restaurant for six months.

On May 22, 1944, defendants Richter and Hagenios were arrested in a hotel room in Ocean Park, California, where they were registered under fictitious names after their return from San Francisco together on May 19th. It was not established whether appellant knew that they were so registered. At this time appellant had a home in Los Angeles with his wife, who was out of town at the time of the robbery. At the time of the arrest, the police found in the hotel room, forty-nine .38 caliber cartridges and a cartridge box that had contained fifty cartridges. At the time of the robbery, Hagenios fired one shot that lodged in the wall of the cafe.

The victim of the robbery testified that Hagenios took $1,915, including the amount of the customer's pay check. When Hagenios and Richter were arrested they had $232 and $278, respectively, on their persons.

Police Officer Subers testified that he was one of the arresting officers and that when the cartridges were found in the hotel room, Hagenios told him that they were his, and that appellant at that time denied any knowledge of the robbery and stated that the $278 in his possession was derived from a sale of his automobile and a loan of $100, both negotiated before his trip to San Francisco, and $90 he won there on the races. Subers also testified that appellant and Hagenios were lodged in the West Los Angeles jail, where on the night of May 23d he had a conversation with the two prisoners and that during this conversation Police Officer Ward was present and that during the last part of the conversation Police Officer King was present.

Subers testified that in the course of this conversation he advised the defendants that he had a good case against them and asked if they would plead guilty. He also requested their

cooperation in recovering the rest of the money. At this point, according to the witness, Hagenios denied getting more than $780, which included the money in appellant's and Hagenios' possession, $220 that had been given to Koenig, and money that had been spent. Appellant stated that ''That was all they had gotten.'' The witness testified that Richter also said that he had given ''Koenig $120 as his share of the job'' and that ''they [Hagenios and Richter] had picked'' up the car used in the robbery ''at a drive-in place at Wilshire and Santa Monica Boulevard''; that appellant said that he drove the car and abandoned it after the robbery one block east of St. John's Hospital in Santa Monica.

Police Officer Subers also testified to a later conversation at which Richter, Hagenios, Koenig, Officer King, and he were present. He asked defendant Koenig if he was sure that the $220 received from the other defendants was just a loan and appellant ''spoke up and said, 'I gave you $120.00 and it wasn't a loan.' ''

Police Officer King testified that he did not recall the first conversation to which Subers had testified, but that he was present at the second conversation after Koenig was brought in. He stated that he asked Koenig and Hagenios to ''tell us about the robbery and Hagenios spoke up and said that all three were involved in the robbery, and that Richter had driven the car . . .''; that Richter at first denied this ''and then Hagenios said, 'You are into this as well as we are, and we are not going to take the rap for this alone; . . .' '' At this point, according to the witness, appellant admitted that he drove the car. The rest of Officer King's testimony so far as it related to Richter, concerned the latter's description of the car as a green convertible and his admissions that he knowingly participated in the robbery, which the three of them had planned. The admissions as to the acquisition and disposition of the car were substantially the same as those Subers testified were made at the first conversation.

Police Officer Ward was not called to testify. Police Officer Burham testified that he received instructions on the night of May 23d to look for an automobile one block east of St. John's Hospital, and that he and his partner went to that location and found a 1937 La Salle green convertible that was on their list of stolen cars.

Appellant testified that the money in his possession at the time of his arrest was what remained after his San Francisco

trip of the money received from the sale of his car, a $100 loan, and $70 that he won in San Francisco on the races. He denied admitting guilt or making the statements attributed to him by Officers King and Subers and stated that he heard of the robbery for the first time when he was arrested.

Appellant contends that all the evidence against him was circumstantial and that the trial court failed properly to instruct the jury with regard to circumstantial evidence. Whether all the evidence was circumstantial depends on whether the testimony as to appellant's admissions was direct or circumstantial evidence. In other jurisdictions evidence of oral confessions is direct and not circumstantial evidence. (See 40 A.L.R. 571; note L.R.A. 1917D 595 and 73 U.Pa.L. Rev. 317; Underhill Criminal Evidence (4th ed., 1935) § 4.) Research has failed to reveal any case holding otherwise, except *Damas* v. *People*, 62 Colo. 418 [163 P. 289, L.R.A. 1917D 591], which was expressly overruled in *Mitchell* v. *People*, 76 Colo. 346 [232 P. 685, 40 A.L.R. 566]. Section 1832 of the Code of Civil Procedure, however, defines indirect evidence as ". . . that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence. For example: a witness proves an admission of the party to the fact in dispute. This proves a fact, from which the fact in dispute is inferred." A confession is an admission of guilt (*People* v. *Connelly*, 195 Cal. 584 [234 P. 374]), a fact in dispute. Under the statute, the testimony of a witness that the defendant admitted guilt would seem to be direct evidence that an admission or confession was made by defendant but circumstantial evidence of the truth of what was admitted. Whether or not all evidence of oral confessions or admissions must be considered as circumstantial evidence under section 1832, we will assume, for the purpose of this case, that all of the evidence against appellant was circumstantial. That assumption does not lessen the weight of the evidence, for circumstantial evidence is as adequate to convict as direct evidence. (*People* v. *Latona*, 2 Cal.2d 714 [43 P.2d 260]; 1 Jones, Commentaries on Evidence, 16-25; 2 Wharton, Criminal Evidence, § 926.)

The trial court instructed the jury that "There are two classes of evidence recognized and admitted in courts of justice, upon either of which juries may lawfully find an accused guilty of crime. One is direct evidence, which is the direct

testimony of any eyewitness. Such evidence may consist of any act, declarations or circumstances admitted in evidence tending to prove the crime charged or tending to connect the defendant with the commission of the crime.

"If upon consideration of the whole case you are satisfied to a moral certainty and beyond a reasonable doubt of the guilt of a defendant, you should so find, irrespective of whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction between circumstantial evidence and direct evidence in the degree of proof required for conviction but only requires that the jury shall be satisfied beyond a reasonable doubt by evidence of either the one character or the other, or both.''

The judge also instructed the jury that, ''If the evidence in this case as to any particular count, is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of a defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of such defendant's innocence, and reject that which points to his guilt.'' Appellant makes no objection to the general instruction but contends that the special instruction on evidence susceptible of two interpretations was not complete and that the trial court erred in refusing to give an instruction offered by appellant. The requested instruction read, ''In order that a jury may be warranted in finding a defendant guilty on circumstantial evidence, all the facts and circumstances necessary to establish the conclusion of guilt must be proved beyond all reasonable doubt, all such facts and circumstances must be consistent with each other and with the conclusion sought to be established, which is that the person on trial committed the crime as charged. All such facts and circumstances, must be inconsistent with any reasonable theory of the innocence of the defendant, William Richter, and such facts and circumstances, taken all together, must be of such conclusive and satisfactory nature as to produce in the minds of the jurors a reasonable and moral certainty that the person on trial, William Richter, and not some other person, committed the offense charged.''

The requested instruction was improperly refused. In *People* v. *Bender*, 27 Cal.2d 164 [163 P.2d 8], the defendant was convicted on circumstantial evidence alone under an instruction substantially identical with the one given in the

present case. It was there held (27 Cal.2d 175) to be the duty of the trial judge, on his own motion, to include in the instruction a statement that ". . . to justify a conviction, the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion." Such an instruction is required by the weight of authority if all the evidence is circumstantial. (See 89 A.L.R. 1378.) Although the requested instruction deals with other matters, it properly states the principle of the interpretation of circumstantial evidence. The statement that the jury must find that "William Richter, and not some other person, committed the offense charged" might have been left out. There were adequate instructions on the nature of the offense, however, and the jury could not have been confused by this statement.

The failure either to give the requested instruction or to include in the instruction given a proper statement of the principle that the evidence must be inconsistent with any other rational hypothesis was error. It does not follow, however, that error in this regard necessarily requires reversal of the trial court. In the *Bender* case, it was held that the failure to give a complete instruction was not prejudicial under the facts in that case. Similarly in the present case such failure was not prejudicial. It is true that in *People* v. *Rayol,* 65 Cal.App.2d 462 [150 P.2d 812], the court held that the failure to give the complete instruction was prejudicial, but a conviction in that case involved the state's proving that the defendant knew that she had participated in an act of sodomy although she was under the influence of intoxicating liquor at the time, and the evidence was confined almost entirely to her participation. The jury could reasonably have concluded that defendant was not a knowing participant in the act. In *People* v. *Hatehett,* 63 Cal.App.2d 144 [146 P.2d 469], the court also held that the failure to give the complete instruction was error, but it did not reverse on this error alone but on this error and several other errors that were substantial.

 Appellant contends that the testimony of the two police officers was so contradictory as to be unreliable, and that the other evidence, under the circumstances, was insufficient to sustain the conviction. It is true that there were certain inconsistencies between the testimony of the two officers in regard to who was present at the two conversations and as to whether certain statements were made by appellant at one

time or another but these discrepancies were not substantial. As to the admissions that they testified were made by appellant, the two witnesses were in accord. Certainly it is no ground to disregard such testimony that one or the other may have incorrectly recalled the time when the alleged statements were made.

Section 2061 of the Code of Civil Procedure, subsection 4, provides that on all proper occasions the jury is to be instructed ''That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution.'' No such cautionary instruction was given by the trial judge nor was one requested. It was formerly the rule that even the refusal to give such an instruction was not error on the ground that the instruction amounted to a mere commonplace statement of what every jury was believed to know. (*People* v. *Raber,* 168 Cal. 316 [143 P. 317].) Later the code section was held unconstitutional as authorizing comment on the evidence. (*Hirshfeld* v. *Dana,* 193 Cal. 142 [223 P. 451].) In *People* v. *Dail,* 22 Cal.2d 642 [140 P.2d 828], the Hirshfeld case was overruled, and it was held that the section was never unconstitutional. In the Dail case an instruction was given directly contrary to the section with respect to the testimony of accomplices. No admissions were involved. In *Conger* v. *White,* 69 Cal.App.2d 28 [158 P.2d 415], such an instruction with respect to admissions was requested and refused. The court held this refusal to be prejudicial error in view of the equivocal nature of the admissions relied upon. The admissions in the instant case, if true, were far from equivocal. In view of the code section, however, such a cautionary instruction should have been given. In view of the record in this case, however, it is improbable that had this instruction been given, the jury would have discounted this testimony to such an extent that it would have returned a different verdict.

Appellant contends that a written statement signed by codefendant Koenig containing matters that tended to implicate appellant was received in evidence without the trial court's properly limiting its application solely to Koenig. The record shows, however, that when Police Officer Subers was testifying with regard to a conversation with Koenig, the court, at the suggestion of appellant's counsel, admonished the jury that it could consider this conversation only as affecting Koenig. Later this statement was read to the jury without

further admonition, and none was requested. At the close of the People's case, the statement was offered in evidence as an exhibit solely against Koenig. The trial court instructed the jury that "Any statement you may find to have been made by any defendant after the commission of a crime, if you find a crime to have been committed, may be considered by you as evidence affecting, if it does affect, only the defendant who may have made such statement and not as affecting any other defendant." Under these circumstances no substantial error resulted from the failure to admonish the jury again at the time of the reading of the statement.

The jury was fully instructed as to reasonable doubt and in regard to the credibility of witnesses in general and was told, in effect, that it must bring in a verdict of not guilty if there was any reasonable interpretation of the evidence that pointed to innocence. After careful examination of the record, we must conclude that the errors either alone or in combination, did not interfere with the substantial rights of the appellant or result in a miscarriage of justice.

The judgment and order are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.