[Crim. No. 1484.   Fourth Dist.   Oct. 3, 1961.]

THE PEOPLE, Respondent, v. ROBERT L. MOORE, Appellant.

94

Thomas Whelan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Respondent.

COUGHLIN, J.—The defendant, appellant herein, was charged with, tried by a jury for and convicted of the offense of abduction of a woman for defilement, i.e., a violation of section 265 of the Penal Code; was sentenced to imprisonment in the State prison; and appeals from the judgment entered accordingly.

The contentions on appeal are: (1) that the evidence is insufficient to sustain the verdict; (2) the court erred in failing to give certain instructions on its own motion; and (3) the district attorney was guilty of prejudicial misconduct.

The defendant was a police officer. On the night of September 27, 1960, while off duty, he went to the Bar-B-Q Queen Café and bar, where an unmarried colored woman named Loydell Wilks, age 20, was working as a waitress. The defendant ordered a beer; inquired of the proprietor: "Could you get me a colored girl"; was given a negative answer;

retorted with the further inquiry: "What about your waitress"; and again was given a negative answer. At this time Miss Wilks passed by and defendant attempted to get her to go with him, but she refused. Thereupon he asked her for her "health card"; she opened her purse and the defendant noticed a welfare identification card therein. After looking at the welfare card, the defendant told the proprietor and Miss Wilks that they were in "hot water"; that it was illegal for Miss Wilks to work because she was "on welfare"; and that he would have to run them down to jail. He showed Miss Wilks his badge and told her to go with him, which she did, believing she was going to jail and that she should not resist arrest. They got into the defendant's automobile. Upon inquiry, the defendant found that Miss Wilks was unmarried; that she had three children, one of which was a baby, for whom she was receiving aid; and that the children were being cared for by her sister. Then, as related by Miss Wilks in her testimony, the defendant said: "He had to see my baby because it was so young, he wanted to show why I was away from it at that time in the morning." Following this, they drove to the sister's home; Miss Wilks got her baby; returned to the car; and was told by the defendant that he wanted to go to her home to see if she had someone staying with her. After entering her home, the defendant looked about the house; inquired of Miss Wilks how many men she had had in the last six months; asked her if she wanted to go to jail; said: "You know I have arrested you"; ordered her to take off her clothes; and when she complied, placed her on the bed and had intercourse with her. Miss Wilks testified that she left the café with the defendant and submitted to him in her home because she was afraid. The defendant had told her that she was in "hot water"; was "in up to her neck"; was arrested; and her children would be taken from her. When the defendant finished he said to Miss Wilks: "You don't have to say anything about this. I don't even know your name," and then left. Shortly thereafter the proprietor of the café came to the home; Miss Wilks told him what happened; he telephoned the police; and the next day she was interviewed by them.

In the course of an investigation that ensued, the defendant stated that he was so drunk on the night in question that he did not remember what occurred. He was able to account for his actions only up to shortly after 10 o'clock which was before he had gone to the Bar-B-Q Queen Café, or the Wilks

home. However, the next day he told the officers that he did remember a little more about what happened; that he went to the Bar-B-Q Queen Café; that he and the woman left at her suggestion; that he went to her house and engaged in an act of sexual intercourse with her; and that he then left and went home.

The defendant testified that he had been to a number of bars on the night in question; that he had been drinking; that he went to the Bar-B-Q Queen Café where he had a beer and jokingly asked the proprietor: "[H]ow about fixing me up with that girl"; that he asked Miss Wilks if she had a health card and had been cleared by the vice squad but did not talk to her about the welfare card; that she asked to be taken home; that they picked up the baby, and then went to her home; that he was invited in; sat on the couch; was given a drink of beer; and went to sleep or passed out; that when he woke up he was fully clothed, as was Miss Wilks; that he then went home; and that he did not "honestly" know whether he had sexual intercourse with her.

### SUFFICIENCY OF THE EVIDENCE

In considering the sufficiency of the evidence to support a verdict, the appellate court determines only whether there is any substantial evidence in the record, either direct or indirect, contradicted or uncontradicted, which justifies the conclusion reached. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911] ; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Kessler,* 62 Cal.App.2d 817, 821 [145 P.2d 656].) The facts heretofore noted fully support the verdict in this case. The defendant directs our attention to some of the conflicts in the evidence, particularly that raised by the testimony of the proprietor of the Bar-B-Q Queen Café to the effect that Miss Wilks told him the defendant had intercourse with her in the automobile, whereas she testified that the act of intercourse took place in her bedroom. This state of the record is used as the basis for an attack upon the credibility of the testimony given by Miss Wilks. Questions involving credibility of witnesses, the weight to be given their testimony, and the effect of conflicts therein or with other testimony are subjects for determination by the trier of fact and not by the appellate court. (*People* v. *Ashley,* 42 Cal.2d 246, 266 [267 P.2d 271] ; *People* v. *Newland, supra,* 15 Cal.2d 678, 681; *People* v. *Mickalian,* 114 Cal. App.2d 11, 13 [249 P.2d 358].) The contention that the verdict is not supported by the evidence is without merit.

## Failure to Give Instructions

It is contended that the trial court erred in failing to give certain instructions on its own motion. The trial attorney for the defendant, who is not his attorney on appeal, offered or requested no instructions on the defendant's behalf. ■ The general applicable rule is stated in *People* v. *Warren,* 16 Cal. 2d 103, 116-117 [104 P.2d 1024] where the court said:

" 'It is the duty of a court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, where they are not proposed or presented in writing by the parties themselves.' " (See also *People* v. *Yrigoyen,* 45 Cal.2d 46, 49 [286 P.2d 1]; *People* v. *Buffum,* 40 Cal.2d 709, 724 [256 P.2d 317].)

■ Particular complaint is made of the fact that the court did not give an instruction embodying the principle that to justify a conviction on circumstantial evidence the facts and circumstances relied upon not only must be entirely consistent with the theory of guilt, but must be inconsistent with any other rational conclusion. In support of his position the defendant cites the case of *People* v. *Bender,* 27 Cal.2d 164, 174-175 [163 P.2d 8], where the evidence of guilt was "entirely" circumstantial; where it was contended that "the trial court of its own motion should have given an instruction embodying the principle (as stated in 8 Cal.Jur. 371, § 405) 'that, to justify a conviction, the facts or circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion' "; where the Supreme Court declared that such an instruction should be given in "every criminal case wherein circumstantial evidence is received," and "[i]n a criminal case where circumstantial evidence is *substantially* relied upon for proof of guilt" (emphasis added); but found that the failure to give such an instruction in the case under review did not constitute prejudicial error. Also cited is *People* v. *Yrigoyen, supra,* 45 Cal.2d 46, 49, 50, reversing a judgment of conviction because the instruction in question had not been given, where the only evidence on the issue of criminal knowledge was circumstantial, but the court observed: "Cases holding that the instruction need not be given, even upon request, where circumstantial evidence is only incidental or corroborative are not, of course, applicable here."

■ Although varied language has been used to express the applicable principle of law, it generally is accepted that if proof of a significant element of the charge depends upon

circumstantial evidence the instruction in question should be given. (*People* v. *Yrigoyen, supra,* 45 Cal.2d 46, 49; *People* v. *Zerillo,* 36 Cal.2d 222, 233 [223 P.2d 223]; *People* v. *Bender, supra,* 27 Cal.2d 164, 174; *People* v. *Candiotto,* 128 Cal.App. 2d 347, 357 [275 P.2d 500]—overruled in other particulars by *People* v. *Gould,* 54 Cal.2d 621, 630 [7 Cal.Rptr. 273, 354 P.2d 865]; *People* v. *Tholke,* 75 Cal.App.2d 857, 861 [171 P.2d 904]; *People* v. *Rayol,* 65 Cal.App.2d 462, 464, 466 [150 P.2d 812]; *People* v. *Hatchett,* 63 Cal.App.2d 144, 152 [146 P.2d 469]; *People* v. *Holden,* 13 Cal.App. 354, 359 [109 P. 495].) ▮ However, the rule is subject to the limitation that if the circumstantial evidence in the case is merely "incidental" or "corroborative," the instruction need not be given. (*People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545]; *People* v. *Bernal,* 174 Cal.App.2d 777, 783 [345 P.2d 140]; *People* v. *Barkoff,* 163 Cal.App.2d 639, 644 [329 P.2d 1005]; *People* v. *Williams,* 155 Cal.App.2d 328, 332 [318 P.2d 106]; *People* v. *Thompson,* 147 Cal.App.2d 543, 548 [305 P.2d 274]; *People* v. *Borbon,* 146 Cal.App.2d 315, 321 [303 P.2d 560]; *People* v. *Norton,* 141 Cal.App.2d 790, 794 [297 P.2d 439]; *People* v. *Harmon,* 89 Cal.App.2d 55, 59-61 [200 P.2d 32]; *People* v. *Holden, supra,* 13 Cal.App. 354, 359; see also *People* v. *Zerillo, supra,* 36 Cal.2d 222, 233; *People* v. *Candiotto, supra,* 128 Cal.App. 2d 347, 357; *People* v. *Tholke, supra,* 75 Cal.App.2d 857, 861.) In *People* v. *Lapara, supra,* 181 Cal. 66, 70, the court stated that the reason for such a limitation is "found in the danger of misleading and confusing the jury where the inculpatory evidence consists wholly or largely of direct evidence of the crime." ▮ Furthermore, "the standard instructions on circumstantial evidence are not applicable to evidence of extrajudicial admissions." (*People* v. *Gould, supra,* 54 Cal.2d 621, 629.) ▮ In addition, to justify a reversal not only must a trial court have erred in failing to give the subject instruction but this error must have prejudiced the defendant's case. (*People* v. *Koenig,* 29 Cal.2d 87, 93 [173 P.2d 1]; *People* v. *Bender, supra,* 27 Cal.2d 164, 174; *People* v. *Barkoff, supra,* 163 Cal.App.2d 639, 644-645; *People* v. *Williams, supra,* 155 Cal.App.2d 328, 332; *People* v. *Norton, supra,* 141 Cal.App.2d 790, 794; *People* v. *Candiotto, supra,* 128 Cal.App.2d 347, 355; *People* v. *Webster,* 79 Cal.App.2d 321, 327 [179 P.2d 633]; *People* v. *Heuss,* 95 Cal.App. 680, 684 [273 P. 583] [on denial of pet. for hearing in Sup. Ct.].)

▮ "Every person who takes any woman unlawfully,

against her will, and by force, menace, or duress, compels her . . . to be defiled,'' is guilty of a felony. (Pen. Code, § 265.) All of the elements of this offense are included in the statement of facts heretofore outlined; the threats to arrest Miss Wilks and take her children from her constitute a menace (Civ. Code, § 1570); proof of the use of force was not necessary to establish the unlawful taking (*People* v. *Demousset,* 71 Cal. 611, 613 [12 P. 788]; *People* v. *Marshall,* 59 Cal. 386, 388); and the act of sexual intercourse in question constituted a defilement. (*People* v. *Palacio,* 86 Cal.App.2d 778 [195 P.2d 439]; *People* v. *Neal,* 65 Cal.App.2d 160 [150 P.2d 13].) All of these facts were established by the testimony of the victim, which was direct evidence. The incidents occurring at the café were established by the testimony of the proprietor, which was direct evidence. The desires of the defendant with respect to the victim as expressed by him in the café were further established by the testimony of a customer, which was additional direct evidence. The circumstantial evidence presented by the record involves the two written statements made by the defendant to his superior officers; in the first of these he denied any knowledge of the incidents at the café or at the victim's home, claiming that he was so intoxicated he could not remember what happened during the time in question; and in the second of these he admitted being in the café, taking the woman home, and having sexual intercourse with her. Insofar as these statements were contradictory of each other and of his testimony, they form the basis for an inference of guilt (*People* v. *Tolson,* 109 Cal.App.2d 579, 581 [241 P.2d 32]; *People* v. *Walker,* 99 Cal.App.2d 238, 242 [221 P.2d 287]; *People* v. *Sherman,* 97 Cal.App.2d 245, 250 [217 P.2d 715]; *People* v. *Gentekos,* 118 Cal.App. 177, 182 [4 P.2d 964]), and to this extent constitute circumstantial evidence. However, under the circumstances of this case, evidence of a consciousness of guilt based on inconsistent statements was merely corroborative, and instructions governing reliance upon circumstantial evidence as proof of guilt were not required. Insofar as these statements tended to prove the truth of their contents, i.e., either that the defendant was so intoxicated that he did not know what occurred on the night in question or that he had intercourse with Miss Wilks, they were hearsay, and, as such, indirect evidence, but were not subject to the rule requiring circumstantial evidence instructions. (*People* v. *Gould, supra,* 54 Cal.2d 621, 629-630.) Nevertheless, the defendant contends

that his statement admitting sexual intercourse should not be accepted because of the circumstances under which it was made, i.e., that he knew his superior officers wanted him to say that he had sexual intercourse with the victim and he acted under the belief that if he did so, although he would be dismissed from the police force, he would not be prosecuted. Whether the statement was or was not made under the circumstances related by the defendant was a fact to be determined from his testimony and that of the officers involved. To the extent that such determination involved a resolution of the conflict between his testimony and that of the officers, it resulted from a consideration of direct evidence. On the other hand, to the extent that such determination involved not only a resolution of the conflict between direct evidence but also the deduction of inferences therefrom, it was concerned with circumstantial evidence. However, the defendant's admission of intercourse was merely corroborative of the testimony of Miss Wilks, as well as the testimony of the café proprietor and of the customer to the fact respecting the defendant's desires about her, and comes within the limitation upon the general rule.

Furthermore, no prejudice appears from the alleged error, i.e., the failure to give the subject instruction. The court instructed the jury that: (1) "The guilt of a defendant may not be established alone by any statements made by him outside of this trial," and "Evidence, if any, that the defendant, on one or more occasions other than from the witness stand, made false, contradictory or misleading statements concerning the charge against him which now is being tried, may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt." In addition, the defendant testified that he was in the café on the night in question; that he jokingly said he wanted "to steal" the victim; that he asked her about her health card; that she and he left the café together; and that he went to her home. This testimony is inconsistent with his first statement to the police in which he said he was drunk during the time in question and did not know what happened. He does not deny making this statement; offers no explanation for the inconsistency thus displayed; and, from his own testimony, it must be concluded that the statement was false. False statements by a defendant with respect to matters material to the offense charged are evidence of a consciousness of guilt. (*People* v.

*Osslo,* 50 Cal.2d 75, 93 [323 P.2d 397] ; *People* v. *Gibson,* 64 Cal.App.2d 537, 539 [149 P.2d 25] ; *People* v. *Miller,* 19 Cal. App.2d 708, 709-710 [66 P.2d 448] ; *People* v. *Martin,* 16 Cal. App.2d 515, 517 [60 P.2d 1014].)  As a consequence, any error attributable to a lack of the subject instruction, because of its applicability to the evidence of guilt supplied by the inconsistency between the two written statements made by the defendant, as distinct from the inconsistency created by his testimony at the trial, had little or no effect upon the verdict. The charge of sexual intercourse was established by substantial direct evidence. It also is a matter of note that the defendant, as a witness, did not deny having intercourse with Miss Wilks; he stated merely that he did not remember that he had intercourse with her. After reviewing the entire record, including the evidence, we are convinced that the jury would have arrived at the verdict rendered even though the instruction in question had been given.

We conclude that the People's case was made out by direct evidence; that the circumstantial evidence produced was merely incidental to or corroborative of the direct evidence in the case; and that, in any event, the failure to give the subject instruction was not prejudicial to the defendant.

The defendant, in an incidental way, also claims prejudicial error in the failure to give two other standard instructions respecting circumstantial evidence. However, on the basis of the foregoing conclusions, we find this contention to be without merit.

 The court did not give the cautionary instruction usually given in sex cases, and the defendant contends that this failure constituted prejudicial error, citing the decisions in *People* v. *Putnam,* 20 Cal.2d 885, 890-891 [129 P.2d 367] and similar cases in support of his position. The People acknowledge that such an instruction should have been given but deny that any prejudice resulted to the defendant from the error.  The failure to give such an instruction is not reversible error unless it is reasonably probable that a result more favorable to the defendant would have been reached if the cautionary instruction had been given. (*People* v. *Lucas,* 16 Cal.2d 178, 181-183 [105 P.2d 102, 130 A.L.R. 1485] ; *People* v. *House,* 157 Cal.App.2d 151, 157 [320 P.2d 542] ; *People* v. *Owsley,* 76 Cal.App.2d 166, 169 [172 P.2d 561].)  When the testimony of a victim in a sex case is corroborated, the primary reason for the rule requiring the giving of a cautionary instruction ceases to exist and there

is less likelihood of prejudice from a failure to give the same. (*People* v. *Meyers*, 62 Cal.App.2d 24, 29 [144 P.2d 60]; *People* v. *Fleming*, 58 Cal.App.2d 37, 47 [136 P.2d 88]; *People* v. *Roberts*, 50 Cal.App.2d 558, 568 [123 P.2d 628].)

Although Miss Wilks was the only witness to testify to the act of defilement, two witnesses in addition to herself testified to incidents occurring in the café which indicated the defendant's desire to have sexual intercourse with her; he admitted to his superiors that he had an act of sexual intercourse with her; and he did not testify that he did not have an act of sexual intercourse with her. His sole defense was that he took Miss Wilks home as an act of kindness; went into her home; had a drink of beer; and passed out or went to sleep. A jury did not accept this explanation. We have reviewed the whole record, including the evidence, and are of the opinion that it is not "reasonably probable that a result more favorable to defendant would have been reached in the absence of the error . . ." (*People* v. *Watson*, 46 Cal.2d 818, 837 [299 P.2d 243].) Under the circumstances a reversal of the judgment should not be ordered.

The defendant also claims that the court erred in failing to instruct on its own motion that the offense in question "could not be committed if the complaining witness willingly participated in and consented to the act of sexual intercourse." In *People* v. *Neal, supra,* 65 Cal.App.2d 160, 166, the court held that in omitting to request such an instruction the defendant waived his right thereto. The defendant in the instant case did not request the giving of any instructions. Furthermore, there is no direct evidence to the fact that Miss Wilks willingly participated in or consented to the act of sexual intercourse with the defendant; she testified that she did not resist out of fear; nor, fairly construed, is there any evidence from which the jury reasonably could have inferred her willing participation or consent. An instruction should not be given unless there is some evidence in support of the factual situation to which it applies. (*People* v. *Moore,* 43 Cal.2d 517, 530 [275 P.2d 485].)

## Misconduct of District Attorney

In his closing argument the district attorney made a facetious remark concerning the attorney for the defendant which, if taken out of context, might appear to be disrespectful, but when considered as a part of the whole, has no such significance. At the most, the statement to which objection is

made is nothing more than a smile-provoking description of no consequence.

Also in his closing argument, the district attorney indicated that he had a statement from a police officer which would substantiate the officer's testimony concerning the admissions made by the defendant. This comment was provoked by the argument of the attorney for the defendant in which he pointedly directed attention to the fact that the officer in question said there were no statements of the conversations between himself and the defendant. In reply, the district attorney stated that he had a statement of the interview in question which was taken from the notes of another officer and signed by the officer in question. The court admonished the district attorney to limit his remarks to the evidence and he said nothing further about the matter. *In toto*, the remarks objected to were an insignificant part of the argument and in our opinion had no effect upon the result of the trial. Outside the presence of the jury, the court indicated that he would give a general instruction covering the situation; that he did not want to specifically point out the remarks objected to because in so doing, they would be emphasized; and accordingly included in his instructions an admonition to the jury that any statements made by counsel concerning the facts in the case must not be regarded as evidence. The procedure adopted was proper under the circumstances. The misconduct was not prejudicial within the rule heretofore outlined.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 29, 1961.