[Crim. No. 7574. Second Dist., Div. One. Mar. 13, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. BENJAMIN
TELLES GONZALES, Defendant and Appellant.

Frank Duncan and Elinor Chandler Katz for Defendant
and Appellant.

Stanley Mosk, Attorney General, William E. James, As-
sistant Attorney General, and George W. Kell, Deputy At-
torney General, for Plaintiff and Respondent.

LILLIE, J.—Gonzales and codefendant Telles were charged
with two counts of selling heroin in violation of section 11501,

Health and Safety Code. The matter was submitted to the court on the transcript of the preliminary hearing. Found guilty of the offenses charged, Gonzales appeals.

The transcript of the preliminary hearing contains the testimony of two state narcotic agents and a chemist. Agent Robert A. Bark testified to the following. On August 8, 1960, around 10 a. m. he telephoned codefendant Telles who told him that if he would pick him up in 20 minutes they could go down to his "connection" and make a purchase of narcotics. Upon meeting, Telles directed Bark to a location on Vermont near Manchester where they parked; Telles left Bark's car and was gone approximately five minutes. When Telles returned to the vehicle he told Bark that his man had not yet shown up; as they waited Bark gave Telles $250 in marked bills. When a yellow Studebaker appeared, Telles referring to it, said: "Here is the man now." He then left Bark's vehicle and disappeared into a clothing store. Defendant Gonzales was driving the yellow Studebaker. He parked it and walked across the street proceeding until he was opposite Bark's car; as defendant approached it he appeared to look inside. He then turned and walked south on Vermont crossing the intersection to a clothing store into which Telles had already gone; he seemed to hesitate at the entrance of the store and then continued walking south on Vermont until he was out of sight. In five or ten minutes Telles returned to Bark and handed him a rubber balloon containing heroin. .

Agent Bark further testified that on August 11 around 10 a. m. he again telephoned Telles and asked if it would be possible to purchase "two pieces" of heroin; Telles said it could be made for he had already talked to his "connection" and that Bark should pick him up in about 20 minutes. At the direction of Telles, Bark drove him south to 109th Street on Vermont at which place Bark gave him $500 previously marked with fluorescent powder. Telles told him to wait until he was seen in the alley; Bark waited approximately 10 to 15 minutes until he saw Telles walking in the alley between 109th and 110th Streets. Bark drove into the alley and received from Telles two ounces of heroin; Telles told Bark he would return to town with someone else but in a few minutes he was arrested by other state agents.

Agent Dalton L. Newland testified he was in the vicinity of Manchester and Vermont on August 8 and saw a yellow Studebaker parked on the corner; he observed defendant get

out of the car, cross Vermont and wave at Telles. Later he saw Telles come across the street and meet with defendant where some sort of a transaction took place; the two men touched hands and conversed in the driveway after which Telles ran across the intersection to Bark's vehicle and got in. On August 11 he saw defendant in the vicinity of 109th and Vermont; he observed defendant coming from his home on 112th Street, go to the alley just east of Vermont, talk to Telles, get into the Studebaker and drive away. After observing defendant talk to Telles in the alley and having seen the two ounces of heroin defendant gave Bark, Newland participated in the arrest of Telles. Thereafter he went to defendant's residence and arrested him, at which time he examined defendant's hands and clothing and found two fluorescent colors on them similar to the powders which had been placed on the money; powder was also found on defendant's hands and in his pockets and there were traces on the steering wheel of the Studebaker. Defendant told him that he had thrust about 1½ grams of heroin down the toilet at the time the police entered; he also admitted having received $500 from Telles for 2½ ounces of heroin that morning; he said that after meeting with Telles he had gone across Vermont Avenue into a parking lot where he gave the money to his "connection" and $5.00 to his brother. He also admitted giving narcotics to Telles on August 8 and that he had been supplying heroin to support his own habit of 6 or 7 grams of heroin per day.

Appellant says that his arrest was made without probable cause. He presents little argument in support of his contention, cites no authority therefor, and relies entirely upon his claim that "the stories told by the two agents are entirely inconsistent. Agent Newland could not have followed Agent Bark and at the same time follow [sic] appellant Gonzales" (A.O.B., p. 6), contending that the testimony of both is inherently improbable.

Agent Bark testified that he and Newland had a pre-arranged plan that the latter was to cover him on both transactions in the event anything went wrong. Asked if Newland followed him on August 8, Bark answered yes, that he observed him in the rear-view mirror, in the front of him and at various other places and that he had seen him almost throughout the entire time. However, under further questioning it developed that although Bark observed Newland on various occasions throughout his route to Vermont and Manchester he was not in his "constant" view; that Newland

was at various places driving around; that during the time Bark was sitting in his vehicle waiting for defendant to appear (which was in excess of five minutes) Bark saw Newland driving around and come to a stop at a stop sign when defendant pulled up in his yellow Studebaker; that Newland *had come into this area north on Vermont.* It was further established by Newland's testimony that during this time (the five or more minutes Bark was waiting at Manchester and Vermont) Newland drove to the vicinity of defendant's house on 127th Street and saw him leave in the Studebaker, and observed defendant drive into the area of Vermont and Manchester; and that when he (Newland) came back to that location he saw Bark's car parked there.

There is nothing inconsistent in the testimony of these two witnesses. It is apparent that Newland kept Bark under his surveillance until the latter arrived at Vermont and Manchester, and then drove to the area near defendant's home where he observed him start out toward the Manchester and Vermont area; and that he followed defendant, and arrived at the place where Bark's car was parked at the same time defendant drove up in his yellow Studebaker. The evidence clearly allows for sufficient time for this action, for Bark waited at least in excess of five minutes for Telles' "man" to appear at that location. Nor do we see anything inconsistent in the testimony of the agents relative to Newland's surveillance of Bark throughout the transaction on August 11. ██ In any event, questions involving credibility of witnesses, the weight to be given their testimony, and the effect of conflicts therein or with other testimony, are subjects for determination by the trier of fact and not by the appellate court (*People* v. *Ashley,* 42 Cal.2d 246 [267 P.2d 271]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Moore,* 196 Cal.App.2d 91 [16 Cal.Rptr. 294]); and while his contention here constituted a legitimate, though not successful, argument on the trial of the cause appellant does not properly advance his position to this court. ██ The record shows that the credibility of the two agents, the weight to be accorded their testimony and the effect of the alleged conflicts were in fact vigorously argued before the trial judge, but rejected by him. Either the court below, as we, perceived no inconsistency in the stories of the two agents, or it felt that whatever existed was not material. Whatever its conclusion, we are bound by its determination. But it cannot be denied that in any event the evidence concerning the two sales of

heroin is clear and uncontradicted and shows without question the violations charged herein.

We do not know how much more would be required to constitute probable cause than that shown in the case at bar, in which the agents actually witnessed two transactions in which defendant sold narcotics to Telles, a go-between for the agents who gave defendant the money he had previously obtained from the agents, and who immediately thereafter turned the narcotics over to them. Certainly these two transactions and the circumstances surrounding them constituted reasonable cause for the officers to believe that defendant was guilty of the felony with which he was charged.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.