[Crim. No. 2139.  Second Appellate District, Division Two.—November 5, 1931.]

THE PEOPLE, Respondent, v. MIMIS GENTEKOS, Appellant.

N. D. Papa Dakis and C. S. Mauk for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and Hugh S. McIsaacs and Tracy Chatfield Becker, Deputies District Attorney, for Respondent.

ARCHBALD, J., *pro tem.*—This is an appeal by the defendant from judgments of conviction after verdicts of guilty on two counts of an information charging arson and burning of insured property, respectively, and from an order denying a motion for new trial.

Defendant was charged with arson, in count one, and in count two with the burning of insured property. The first count was amended before trial, by order of the court and at the request of the district attorney, to charge wilful and malicious burning of property under section 448a of the Penal Code; and the second count, which read "did wilfully, unlawfully and feloniously burn", etc., was amended by inserting the word "maliciously" after the word "unlawfully", and the words "set fire to and" after the word "feloniously". The jury returned a verdict of guilty on each count. Motion for new trial was made and denied. The court, however, announced in so doing that as to the second count there was no evidence that any "insured property" was burned, and that the court as to such count would "upon passing judgment modify the judgment" so as to show "attempt" to commit the crime charged. The record before us does not disclose that such was in fact done, as the judgment of conviction actually pronounced, as shown by

such record, is based on the charge in the information and the verdict as returned thereon, viz., "burning insured property, a felony".

Appellant contends that the court erred (1) in admitting certain evidence, (2) in excluding certain of defendant's evidence, (3) in denying defendant's motion for a directed verdict, (4) in refusing to give certain instructions requested by defendant, (5) in giving certain instructions, (6) in denying defendant's motion for a new trial, and also urges (7) that the verdicts are not supported by the evidence.

It appears from the evidence that defendant operated a small restaurant on East 8th Street, Los Angeles, in which fire broke out at about 10:30 P. M. on January 24, 1931. The firemen responding to the alarm found both front and rear doors locked, and on breaking in found the door between the kitchen and the rear hallway open and a fire burning near the east wall of the kitchen, which was back of the room where the meals were served and at the rear of the building. This fire apparently originated at the spot where it was burning, and in its debris was found a broken drinking glass which had evidently contained alcohol and a rag saturated therewith. Between the counter and the shelving in the front room of the place, about twenty-five feet from the site of the fire in the kitchen, there was discovered an arson "plant", reaching from the floor to about the level of the counters, consisting of a paper bag on the floor with a burning tallow candle in the center of it, surrounded by "a number of boxes, paper, etc., crumpled up newspapers, and over the whole thing was a couple of table-cloths or table-covers. There were also four glasses containing alcohol" located at the four corners of the "plant". The defendant was found in his room a short distance from the restaurant. He told the officers that he had closed the restaurant at about 5 P. M. that day and went to visit a friend, returning alone to the restaurant at about 8 P. M. for the purpose of using the toilet and hiding ten dollars in currency he had left there; that he turned on the lights when he entered and then turned them off for about ten minutes while he was hiding the money; that he locked the door and then left. At the trial he testified that he returned to the restaurant as he did for the purpose of making some sandwiches to take on a hunting trip he intended to make the next day

with two friends, who joined him at the restaurant and helped prepare the sandwiches and coffee; that they were there about half an hour, and that he took the sandwiches and coffee to his room, placing the former, contained in several paper bags, on the bureau in his room, put the coffee in a thermos bottle, which was then wrapped in "a little piece of wool" to keep it warm, and placed same in a closet of his room. The officers who went to the room testified that there were no sandwiches on the bureau nor any coffee in the closet or elsewhere in the room. It appears from the evidence that defendant had a policy of $4,000 on the furniture and fixtures of the restaurant and an additional policy of $500 on supplies; that he purchased the business for $3,000 in October, 1929, paying $1500 cash and the balance in monthly payments of $100, which he had paid for eight or nine months, when business dropped off, and thereafter he had paid at the rate of $50 per month, but did not make payment of that amount on January 15, 1931, when it was due, and that he was owing $450 on the purchase price when the fire occurred. Defendant also owed about $275 for crockery placed in the restaurant in December and for changes made the first of the year in fixtures and booths. There was likewise evidence to the effect that defendant was behind in his rent about a month and had complained to his landlord that business was not very good, asking a reduction in rent; that the landlord agreed to reduce the rent from $85 to $75 per month if defendant would pay up—that he had been behind in his payments each month for several months. The rear door of the restaurant was locked by bolts which were forced by the firemen on entering; the front door was opened by breaking the glass and unlocking the door from the inside. It also appears that the lock on the front door was a Sargent cylinder lock which could not be opened by a master key but required a pick and tension bit and some experience, and that then it would take from ten minutes to half an hour to open it, depending on the condition of the lock and the skill of the operator.

There was evidence from which the jury could have concluded that at the time of the fire the value of the fixtures in the restaurant was $1800 and the foodstuffs $75. The man who sold the business to defendant testified that it cost him around $500 to $600 to fix the place up after he

took it back from the latter, and that he sold it for $1500 "because otherwise I couldn't sell it; nobody would take it". Defendant was asked by the police how he could explain the situation "where he was alone in the place, and he said, 'I cannot'. He said, 'it looks awfully bad for me'." Photographs were taken of finger-prints on the waterglasses used for the alcohol, and which it was testified had not been disturbed until photographed, but they were mostly blurred. One, however, had an impression corresponding to the third finger of defendant's right hand, which had a small scar on it. Concerning this it was testified defendant said: "Well, that might be my finger print on the glass because if those glasses came from a tray up toward the front of the counter it is probably my finger prints." The evidence shows that when defendant was first seen by the investigators he said to them that he had had no trouble and had no enemies; that he "was doing a fairly good business and could not account why anyone would want to cause him trouble". A few days later he said that a short time before he had some difficulty with communists. In the course of the investigation he was asked if he had ever collected any insurance or had any other fires, to which he replied that this was the first fire he had had. The officers testified that upon investigation they found that defendant had had a previous fire and had collected some $2,000 on it. Asked about this defendant said it was true, but that he did not own the place and was only renting it from another party whose name he did not remember; that all he got out of it was $70 in wages that the man owed him. He admitted, however, that he had signed papers showing the property was his and that he had made the collection in his own name. Defendant introduced evidence to show that the door between the kitchen and the hall to the rear of it was locked that night by a bolt which had no metal receptacle in the door frame opposite it, but that in lieu thereof a piece of board had been nailed on the frame and that the bolt would be shot in behind the same, locking the door, and that several days after the fire such board was pulled off the frame on one end from an inch to an inch and a half, as though it had been forced from the hallway. There was testimony, however, from which the jury could infer that

such condition did not prevail at the time of the fire and that the door was then open.

■ (1) Appellant insists that the admission in evidence of the conversation with the investigators about a previous fire was prejudicial error. The purpose of its admission, however, was not to prove a similar offense, as appellant urges. As a matter of fact no offense was proven. There was nothing in the testimony objected to so indicating, nor could the jury draw any such inference therefrom. The accused had said that this was his first experience with fire and that he had never collected any insurance. The investigators then ascertained that such was not the case and told him what had been discovered, whereupon he admitted and explained as heretofore noted. Appellant, therefore, had made contradictory statements during the investigation which appeared to be an attempted concealment of an incident in his life similar to the one then under inquiry. Such circumstance would seem to be a proper matter for the jury to consider as tending to show consciousness of guilt, for in the absence of a reasonable explanation it might well be inferred that the statement referred to was made for the purpose of misleading the investigators or avoiding suspicion.

■ (2) Some evidence was introduced by appellant tending to show that communists had objected to his feeding men in need and said, "all right, we will get even with you". He was again asked what threats such persons had made. Objection was made thereto and sustained. No evidence was introduced identifying such persons or showing that they ever repeated such warning, or in any way identifying them as ever having been in any way connected with the fire. Such evidence could only show that possibly there might be some persons who had a motive to commit the crime charged. The testimony sought to be elicited could do no more than afford "a possible ground of possible suspicion against another person", and consequently was inadmissible. (*People* v. *Mendez,* 193 Cal. 39, 51 [223 Pac. 65].) As we have shown, such evidence had already been admitted without objection, and even if it were admissible appellant was not prejudiced.

■ (3 and 6) We see no error in refusing to give a directed verdict or in denying defendant's motion for a new

trial so far as count I is concerned. The jury evidently believed that appellant told the investigating officers the truth when he said he was in the restaurant alone and rejected the later story told by him and his two friends. The place having been securely locked by appellant before he left, there being no evidence of any breaking in by another, the fire occurring so soon after he left and his finger-prints showing on one of the glasses used in the "plant", the jury might well infer, in view of the other evidence showing motive, that the accused arranged two "plants", only one of which operated as planned before the firemen arrived.

██ (4) Appellant requested several instructions which isolated certain evidence and then asked a charge concerning it, as, for instance, that if they believed defendant was solicited to obtain fire insurance shortly after an explosion had taken place in the vicinity of his place of business such fact was not in itself a sufficient circumstance to convict him. The court very correctly indorsed thereon: "Refused. Obviously unnecessary." Other requested instructions called attention to specific evidence, such as the alleged threats of communists, the possibility of there being an open window in the side of the building which would afford access, and that the "door leading into the kitchen from the rear part of the building was bolted by defendant" and was found open at the time of the fire, and charged the jurors that they had a right to take such facts into consideration in determining whether or not some person other than defendant set the fire. The jurors were instructed that the defendant could not be convicted merely on probabilities, but that "the prosecution must establish the fact, beyond a reasonable doubt, that he, the defendant, started the fire", and that would seem to be sufficient without commenting specially on specific evidence which the jury apparently did not accept and which was largely incompetent. Other requested instructions were fully covered by those given. We find no error in the refusal to give the instructions requested.

██ (5) We fail to see how appellant was prejudiced by the giving of an instruction which substantially quoted section 450 of the Penal Code and then told the jurors that if they believed from the evidence beyond a reasonable doubt that the defendant "did burn insured property as charged in count II of the information" they must find him "guilty of

burning insured property'', even if the record contains no proof that any of the property burned was insured. The instruction could have had nothing to do with the verdict actually returned. It rather emphasized the fact that the jury must find that ''insured property'' was actually burned before it could return such a verdict. The evidence showed clearly an attempt to burn such property, and it was within the province of the jury to return a verdict for the lesser offense.

██ (7) We have already pointed out that the trial judge agreed with appellant's contention that so far as count II is concerned there is no evidence that any insured property was burned, and with that we agree. The court, as we have said, properly denied the motion for new trial, stating that under the power given him by section 1181 of the Penal Code, subdivision 6, in passing sentence he would modify the judgment to an ''attempt'' to commit the crime charged. The evidence supports such a judgment, even though it does not the one actually entered, and we see no error in denying the motion for·a new trial as to such count.

As to count I the judgment and order are affirmed. As to count II the order is affirmed. The judgment on count II is reversed and the cause remanded to the trial court with directions to enter judgment against the defendant on said count finding him guilty of attempt to burn insured property, and to pronounce judgment upon him as prescribed by law.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 20, 1931.