[Crim. No. 2718. First Dist., Div. Two. Aug. 13, 1951.]

THE PEOPLE, Respondent, v. LOUIS LANDRY, Appellant.

Leslie C. Gillen for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn and Winslow Christian, Deputy Attorneys General, for Respondent.

DOOLING, J.—The defendant, who was convicted of the possession of narcotics, appeals from the judgment and the order denying a new trial.

Defendant operated a night club in San Francisco and had his living quarters in the same building. At about 2:30 a.m. on May 25, 1950, a party of federal narcotics agents and San Francisco police officers, after knocking several times at the door and attracting the defendant's attention, forced an entrance into the building occupied by him. As the party entered defendant was descending the stairway. Hearing the noise of the water tank of a toilet refilling the officers went to the bathroom. They found a capsule floating in the toilet bowl and recovered from the trap of the toilet a paper package. Analysis showed that a sample of the water taken from the bowl was impregnated with heroin and that the capsule and paper package each contained heroin. On the trial the defendant admitted that he had had physical possession of the capsule and package and had attempted to flush them down the toilet just before the officers entered the building. His defense was that he had found them on the floor of his night club while sweeping up after closing, and suspecting the nature of their contents had decided to dispose of them through the toilet.

█ Several officers testified to various incriminating statements made by the defendant. Three testified that when one of the officers said, "Well, Louis, I guess we have you this time," defendant replied, "Yes, I guess you got me good." There was testimony that defendant said of a two by four timber which had been hollowed out and fitted with a spring door that it was his "working plant," that he showed some of the officers an empty can hidden in an adjoining basement which he said had been used to conceal narcotics, and a hollow place above the kitchen door which he said had been used for the same purpose; and that he also stated that he had been forced into the sale of narcotics by a big operator of whom he was afraid. Defendant denied making any of these statements.

Defendant argues that the admission of these statements

without proof that they were free and voluntary was error. When the first witness was asked about a conversation with defendant his counsel urged the following objection, which was overruled:

"I am going to offer the objection that no proper foundation has been laid to determine that Mr. Landry was told as to the situation at the time now with reference to the time he was under arrest. . . .

"If it is by way of an alleged confession we ought to know whether the man was informed that he was under arrest, or informed of his rights."

■ Conceding that the incriminating statements were of such a character as to be admissible only if freely and voluntarily made (*People* v. *Nagle,* 25 Cal.2d 216, 222-223 [153 P.2d 344]) the objection actually interposed was without legal validity. In *People* v. *Hoyt,* 20 Cal.2d 306, 314 [125 P.2d 29] the court expressly held that a confession is not rendered involuntary by the failure to advise the suspect of his right to counsel, his right to remain silent if he desires, and that his statements may be used against him. This was followed in *People* v. *Pongetti,* 72 Cal.App.2d 749, 752 [165 P.2d 479] and *People* v. *Triplett,* 70 Cal.App.2d 534, 539 [161 P.2d 397].

No objection of any kind was thereafter interposed to the further testimony of any witness concerning statements made by defendant. ■ While testimony of a confession or of an admission of important incriminating facts is not admissible unless freely and voluntarily made (*People* v. *Dabb,* 32 Cal.2d 491, 495-496 [197 P.2d 1]; *People* v. *Nagle, supra,* 25 Cal.2d 216) it is for the trial judge in the first instance to determine its admissibility "and a considerable measure of discretion must be allowed that court in determining it" (*People* v. *Mehaffey,* 32 Cal.2d 535, 548 [197 P.2d 12]). ■ The better practice would be to lay the foundation in advance, even where there is no objection on the ground that it has not been proved that the incriminating statements were freely and voluntarily made, but the entire course of conduct of the officers during the questioning of defendant was ultimately disclosed to court and jury not only by the prosecution's witnesses but also by the defendant when he took the stand. No claim of threats or promises which would make the statements involuntary was at any time urged upon the court. There is no magic in the order of proof and from the evidence of all witnesses, including the defendant, the court would properly have concluded that the evidence of the statements was ad-

missible if the proper objection had at any stage of the proceedings been brought to its attention. Most significant is the fact that while the ultimate determination of the voluntary character of a confession or incriminating statement is for the jury to determine (*People* v. *Gonzales*, 24 Cal.2d 870, 877 [151 P.2d 251]) defendant proposed no instruction to the court on this subject. A reading of the transcript demonstrates conclusively that no prejudicial error was committed in the admission of this evidence.

■ On the trial defendant attempted to develop the theory that some other person through evil motive had left the narcotic drug on the floor of his club with the design of entrapping him into the appearance of its illegal possession. To this end defendant was questioned and, after objection sustained, an offer of proof was made that a creditor was attempting to get possession of his club, including a telephone conversation overheard between the creditor and his attorney and other statements and conduct of the creditor. The court, in sustaining the objection to this testimony, which from the offer of proof contained no reference to the use of narcotics, said:

"If you can get something a little bit closer to this and can tie it in, I'll permit you to put him back on the stand. But you have to show something a little closer than just the mere fact that (the creditor) said he was going to try to get his place. If you produced evidence that (the creditor) told some one to plant this package in the Club, or something like that, then maybe it would be material."

This ruling was not error. Evidence merely of a motive to make trouble for the defendant is too remote and speculative to justify its admission. *People* v. *Mendez*, 193 Cal. 39, at pp. 51-52 [223 P. 65] discusses this question at some length. The conclusion is there expressed that "mere evidence of motive in another person, or of motive coupled with threats of such other person, is inadmissible unless coupled with other evidence tending to directly connect such other person with the actual commission of the crime charged." See, also, *People* v. *Perkins*, 8 Cal.2d 502, 514-515 [66 P.2d 631]; *People* v. *Wagner*, 21 Cal.App.2d 92, 95 [68 P.2d 277]; *People* v. *Gentekos*, 118 Cal.App. 177, 182 [4 P.2d 964].

■ This was followed by the offer to prove by a narcotics enforcement officer that defendant's attorney had called him on the telephone some time before the arrest to advise him that defendant had been warned of a plot to "plant" nar-

cotics in his club, and by a police officer that defendant at one time had given the officer some cigarettes which defendant told the officer he had found in his club and suspected of being marihuana. The trial court properly sustained the objections to this testimony. In *People* v. *Perkins, supra,* 8 Cal.2d at page 514 the court quoting from *People* v. *Mendez, supra,* said that it seems clear ''that evidence which simply affords a possible ground of possible suspicion against another person should be inadmissible.''

 The defense produced a witness who testified that while he was loading a truck in front of defendant's club he saw an acquaintance known as Little Jesse get out of an automobile in which he recognized defendant's creditor before spoken of as the driver, that Little Jesse came over and held a conversation with the witness in which he asked him ''to do something'' and then went back to the car and was driven away. The court sustained objections to questions directed to what was said in this conversation. In his brief defendant now asserts that he would have proved by this witness that Little Jesse offered the witness money to drop or place a small package in defendant's club. No offer of proof was made to the court, counsel contenting himself with the question: ''Now, what was it that Little Jesse asked you to do?''

We are not called upon to decide whether it would have been error to sustain an objection if the defendant had offered to prove in the trial court that Little Jesse had offered the witness money to drop a package in defendant's club. Such an offer would have approached the trial judge's suggestion in the language quoted above: ''If you produced evidence that (the creditor) told some one to plant this package in the Club, or something like that, then maybe it would be material.'' We are not required to speculate on what ruling the trial judge might have made had there been an offer of proof disclosing that the request to the witness was to place a package surreptitiously in defendant's place of business. ''The asking of questions, unless they disclose the proof expected to be adduced, is not the equivalent of an offer of proof.'' (*People* v. *Danielly,* 33 Cal.2d 362, 376 [202 P.2d 18] ; *People* v. *Fredeen,* 101 Cal.App.2d 105, 108 [224 P.2d 849].)

 While a narcotics officer was on the stand he volunteered the statement that defendant had previously been arrested on a narcotics charge. Defendant's counsel assigned this as misconduct and asked for a mistrial. The court struck out the offending testimony and instructed the jury to dis-

regard it. The refusal to grant a mistrial was not error. Defendant's counsel himself, over the district attorney's objection that the testimony in chief had been stricken, returned to the subject on cross-examination of the witness and enlarged upon it. The insistence of defendant's counsel in pointedly going back to this testimony, after the court had stricken it out and directed the jury to disregard it, might possibly have tended to blind the jurors to the court's admonition. If so counsel cannot blame the prosecution over whose objections he persisted in belaboring the question through the medium of cross-examination.

Several attacks are directed to the instructions. The court read to the jury section 11500 of the Health and Safety Code. The defendant was charged only with *possession* of narcotics and the jury was clearly so instructed. They cannot have been misled by the language of the section which makes it unlawful for any person "to have in his possession, conceal, transport, carry, convey, sell, furnish, administer or give away or attempt to conceal etc. . . . a narcotic," since the only disputed question was whether the defendant's possession was wilful and intentional and the jury was clearly instructed that the charge against defendant was that he "did . . . have in his possession a preparation of heroin" and further correctly instructed as to what constitutes possession within the meaning of the law.

In an instruction based upon section 20 of the Penal Code the court included the words "or criminal negligence." This is a stock instruction from which the reference to "criminal negligence" should be omitted where it is not an issue in the particular case. (*People* v. *Womble*, 67 Cal.App. 2d 885, 889 [155 P.2d 838].) However the jury was instructed at defendant's request that in order to find defendant guilty they must find "that he *knowingly* had such objects in his possession," and we are not persuaded that the jury was in anywise misled by the use of the words "or criminal negligence" in a general instruction.

The court gave no instruction in the language of subdivision 2 of section 2061, Code of Civil Procedure: "That they (the jury) are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds." No such instruction was requested but defendant's counsel cites *People* v. *Bemis,* 33 Cal.2d 395 [202 P.2d 82]

and *People* v. *Dail*, 22 Cal.2d 642 [140 P.2d 828], in which cases the Supreme Court held it the duty of the trial judge on his own motion to instruct the jury in proper cases on other subdivisions of this section. We are convinced that defendant suffered no prejudice by the failure to give an instruction in the exact language of subdivision 2 section 2061 since other instructions given served the same purpose. We quote from the instructions given:

"If there is a reasonable doubt as to the credibility or reliability of any witness whose testimony is necessary in order to convict the defendant, even though the testimony of such witness may be uncontradicted, such reasonable doubt is sufficient to acquit the defendant.

"You are instructed that all people charged with crime are presumed, under the law, to be innocent. It is your duty to listen to the testimony of all witnesses in the light of this presumption. When you finally retire to the jury room . . . it becomes your duty to consider such evidence in the light of this presumption. This presumption is sufficient to acquit any person charged with crime unless it is overcome by evidence that satisfies your mind to a moral certainty and beyond a reasonable doubt of the guilt of the accused; and, unless you are so satisfied it is the sworn duty of you, and each of you to vote 'Not Guilty.' "

In the light of these instructions if "the declarations of any number of witnesses" for the prosecution did not "produce conviction" in the minds of the jurors they could not bring in a verdict of guilty for they were expressly instructed not to base a guilty verdict on the testimony of any witness for the prosecution "if there is *a reasonable doubt* as to the credibility or reliability" of such witness, and in addition to weigh the testimony of every such witness in the light of the presumption of innocence and to bring in a verdict of not guilty unless the presumption of innocence was overcome by evidence that *satisfied their minds* to a moral certainty and beyond a reasonable doubt.

The failure to give a requested instruction on accident and misfortune did not prejudice the defendant since the instructions as a whole made it clear that the defendant's possession of narcotics must be intentional to warrant a conviction; nor was it error on the part of the trial judge to fail to give an instruction on motive on his own motion. Some reasonable limit must be put on the range of instructions which a judge will be required to give *sua sponte* and without

16

request. If not the failure of a defendant to request instructions may become a trap for the unwary judge, who might well have given the instruction if requested but who cannot foresee the fertility of counsel's mind in producing as afterthoughts possibly relevant instructions which neither he nor the judge thought of during the trial. An instruction on motive clearly falls outside of any such reasonable limit since "proof of motive is never indispensable to a conviction." (7 Cal.Jur. 855.)

Unless we assume that an entire group of enforcement officers committed deliberate perjury the evidence abundantly supports the judgment.

The judgment and order appealed from are affirmed.

Nourse, P. J., and Goodell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 11, 1951.