[Crim. No. 2935. First Dist., Div. Two. July 15, 1954.]

THE PEOPLE, Respondent, v. ABRAHAM FOX, Appellant.

Joseph C. Haughey and Toland C. McGettigan for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William K. Coblentz, Deputy Attorney General, for Respondent.

DOOLING, J.—Appellant was charged in one indictment (No. 46039) jointly with certain occupants of room 417 of the Graystone Building at 948 Market Street in San Francisco in four counts. Count 1 charged a conspiracy of the defendants to violate section 337a, Penal Code. Count 2 charged the defendants with the substantive offense of pool selling and bookmaking on or about June 23, 1951 (a violation of Pen. Code, § 337a, subd. 1). Count 3 charged a violation of subdivision 2 of that section on or about the same day (keeping and occupying rooms located at 948 Market Street with books, papers and other paraphernalia for the purpose of recording and registering bets). Count 4 charged a violation of sub-

division 4 of section 337a on the same date (recording and registering bets). For convenience this indictment will hereafter be called the joint indictment.

Appellant was also charged in a separate indictment in which he was the only defendant (No. 46042) with violations of subdivisions 1, 2, 4 and 5 of section 337a. These offenses were charged also as occurring on or about June 23, 1951, in rooms 306 and 307 of the same building. This indictment will hereafter be called the separate indictment.

The other defendants charged with appellant in the joint indictment all pleaded guilty to the substantive offense charged in Count 3 thereof. Thereafter on motion of the district attorney the remaining counts of the joint indictment were dismissed as to all defendants except the appellant.

The two indictments were consolidated for trial and the jury returned verdicts finding appellant guilty as charged in all counts of both indictments. The court granted a new trial on Count 1 of the joint indictment (the conspiracy charge) but denied appellant's motion for new trial on all other counts of both indictments. The judgments provide that the sentences on all counts shall run concurrently.

The evidence showed that on June 23, 1951, after a meeting in the district attorney's office with Thomas C. Lynch, district attorney, and Harold Robinson, deputy director of the California Department of Justice, Thomas P. Judge, special agent of the State Department of Justice went to the Graystone Building accompanied by Frank Brown, an assistant district attorney of San Francisco. The two of them proceeded to the third floor of the building and tapped on the door of room 306 with a key. There was no answer to their knocking so they waited about four minutes. They heard a noise inside and identifying themselves as police officers they broke the glass of the door in order to open it.

No one was in room 306 but there was a locked door leading to room 307. Therefore they returned to the hall and broke the glass of the door to room 307. A small corridor led to another door which in turn led to room 307. This door was opened by a man later identified as the appellant. He was in his shirt sleeves and his coat was hanging in a closet.

The room contained a table, two chairs, three telephones, an adding machine, a radio, a clock and a wastepaper basket. The radio dial was set at 1300 and race results were coming in on the radio. There was also found a daily racing form dated June 23, 1951, and a pad with various lines drawn

thereon and handwriting on the top sheet. Scraps of paper were found in the wastepaper basket and pieced together. Also found in the room were colored pencils, adding machine tape, totals which corresponded to totals computed from the figures on the scraps of paper pieced together, a key which opened the door to room 417 in the same building, and a piece of paper on the desk with the same numerical notations on it as a piece of paper found in the wastebasket.

When asked what he was doing in the room appellant explained that he was a bettor and that he was there to get tips on the horses. He stated that a Mr. Roger Hill was the bookmaker but had stepped out to lunch fifteen minutes before. Appellant had been there for 45 minutes. Appellant admitted that two different parties called to place bets while he was there but said that he did not record them. During the time that Judge and Brown were there the phone rang several times and Judge answered about 14 calls. Each time the person on the line asked for "Abe." When Judge replied, "This is Abe" the calling party would hang up. One caller asked for "Curley Top." Appellant stated the call was for him and talked to the party for several minutes. After hanging up he identified the caller as his wife. There was also a long distance call from Reno and the party asked for "Abe." When Judge answered, "This is Abe" the party hung up.

At the same time that Judge and Brown were in room 307 Ernest Wenberg, a special agent of the State Department of Justice and Cecil Poole, an assistant district attorney, went to room 417 of the same building. They tapped on the glass door with a coin and the door was opened by James Cernusco. Upon entry Wenberg identified himself and immediately announced that the persons present were under arrest. There were four men in room 417. In addition to Cernusco, there was a John Gregory standing near the door; an Alphonse Vella seated at a desk against the north wall; a William Mendello was standing near a hot plate and a radio on the south wall. There were two more men in room 418. A Nick De Melio and Jack Cohen were seated at a table. In room 417 there was a table against the north wall, two telephones, two chairs at the table, two separate sets of bookmaking paraphernalia, a hot plate with a coffee percolator and a radio. In room 418 there were six telephones, a radio, electric clock, filing cabinets, strong box, adding machine, and some separate sets of bookmaking paraphernalia. A key was found in a strong box in room 418 which opened the lock on the door to

room 307. While Wenberg and Poole were in room 417 the elevator operator of the building came to warn the occupants of room 417 that the offices downstairs were being raided. Wenberg testified that he answered all the telephones for two hours and that the parties calling would either ask for a particular individual or identify themselves by what appeared to be nicknames and immediately start reading off bets either by the rundown number of the horses or by actually naming the horses that were running at the tracks.

Russell Miller, an accountant employed by the managers of the building at 948 Market Street during the period from January to July, 1951, testified that he collected the rent once or twice for rooms 306 and 307 from appellant and the latter had requested Miller to remove a partition cutting in half the office in room 307. Appellant also informed Miller where he wanted the telephones placed if the telephone man came in in his absence. Appellant asked Miller to come to room 307 to pick up some insurance papers and appellant also paid the rent at that time. Miller stated that the bills were made out to Roger Hill, but the only one from whom Miller collected rent was appellant. An index card bearing the notation, "Abe Sutter 1-3764" which was the number of one of the telephones in room 307 was filed in the offices of Klinger and Lichtman, the lessees of the office space in the building.

Inspector Marion C. Overstreet of the San Francisco Police Force had been attached to the vice squad for six years and was qualified as an expert in bookmaking cases. Over strong objection he testified that he had arrested appellant in 1946 and at that time Fox said he was a visitor and not a bookmaker at the premises. The inspector testified that the handwriting pad found in room 307 could be used to record bets. He interpreted some markings on the pad to mean that $150 was bet on a horse to win bearing rundown number 33. The straight line drawn through the column on the extreme right indicated that the horse had lost the race. Scraps of paper found in the wastebasket and pieced together were shown to the witness, and he stated the figures indicate it was a betting sheet. The figures and the names on the sheet were interpreted by the witness to represent amounts of money owed or due from certain individuals. The difference between the collect and pay column amounted to $1,836. The amount was found on another piece of paper and had evidently been carried over to the betting sheet for the following day. Ac-

cording to testimony of an expert witness all of the above documents were in appellant's handwriting.

Betting sheets were found in room 417 with the name "Abe" on them. These were described as lay-off sheets showing to whom the bets were spread in order to distribute the risk among various individuals. The expert witness demonstrated by mathematical computation how certain figures on the document found in room 417 were determined and that it indicated these were lay-off bets made by appellant to the bookmakers in room 417.

Mario Peruzzo testified that he worked as a bookmaker in rooms 417 and 418 within a month prior to June 23, 1951. He testified that appellant telephoned room 417 several times and usually identified himself by stating "This is Abe calling." If appellant wished to talk about a bet Peruzzo would turn the call over to someone else in the room. He stated that the betting sheets found on June 23, 1951, in room 417 with the name "Abe" above the record of certain wagers referred to bets made by appellant.

Appellant's first point is that when all of the other defendants named in the joint indictment pleaded guilty and the court dismissed the other counts against them the other defendants could no longer be prosecuted on the conspiracy charge (Count 1), and that Count 1 should for that reason have been dismissed as to appellant. This is so, appellant says, because it requires at least two persons to constitute a conspiracy and the legal effect of the dismissal of the indictment as to the other defendants operated as a bar to their further prosecution on the conspiracy charge. Section 1385 of the Penal Code provides: "The court may, either of its own motion or upon the application of the district attorney, and in furtherance of justice, order an action or indictment to be dismissed. *The reasons of the dismissal must be set forth in an order entered upon the minutes.*" (Emphasis ours.)

The court in entering the dismissals here in question did not set forth any reason for the dismissal. Appellant argues that the language in section 1385 which we have emphasized is mandatory and that the failure to comply with it makes the dismissal operate as a bar to future prosecution of those defendants on the charge embraced in the indictment so dismissed. In this he is supported by *People* v. *Disperati,* 11 Cal.App. 469, 476-477 [105 P. 617]. However in *People* v. *Romero,* 13 Cal.App.2d 667 [57 P.2d 557], the court refused to follow the holding of the Disperati case and after

reviewing the reasons for the legislative requirement that the reasons for the dismissal shall be entered in the minutes concluded that the requirement was one made in the public interest and not for the protection of the defendant. The court said at page 671: ''The section has nothing whatsoever to do with the rights of the defendant. For the court to fail to perform its duty, therefore, is not a matter about which a defendant can be heard to complain. The order of the court, under section 1385 of the Penal Code, in dismissing a felony action may be a matter of public concern, but in no way . . . can it be seized upon by a defendant as the technical means to a coveted end. Section 1387 of the Penal Code definitely and unequivocally provides that such a dismissal is not a bar if the offense is a felony.'' We are satisfied of the correctness of this conclusion. This conclusion disposes as well of the contentions that the rights of appellant were prejudiced by the retention of the conspiracy count in the indictment and that the court erred in refusing to submit to the jury appellant's pleas of once in jeopardy and former acquittal.

Appellant argues the insufficiency of the evidence to support his conviction of the substantive offenses charged in the joint indictment. We find it unnecessary to go into this question because we have concluded that the court's order denying appellant a new trial on Counts 2, 3 and 4 of the joint indictment should be reversed for another reason. As above stated the court did grant a new trial on the count charging conspiracy. ▪ The substantive offenses charged in the joint indictment were based on the activities engaged in in room 417. There was no evidence from which the jury could find that appellant was personally present in room 417. As a conspirator with the persons who were present in room 417, however, he would be criminally responsible for the substantive offenses committed by his co-conspirators in furtherance of the conspiracy, and therefore equally guilty with them of such substantive offenses. (*People* v. *Harper,* 25 Cal.2d 862, 870 [156 P.2d 249]; *People* v. *Kauffman,* 152 Cal. 331, 334 [92 P. 861]; *Anderson* v. *Superior Court,* 78 Cal.App.2d 22, 25 [177 P.2d 315].) ▪ The jury was so instructed: ''the act of one in pursuance of the common design is the act of all, and each is legally responsible for any act of a confederate that follows incidentally in the execution of the common design.'' Having been so instructed the jury once it found appellant guilty of the conspiracy would have no choice but to convict him of the substantive offenses in room 417 com-

mitted by those who were found to be his co-conspirators. The court in granting a new trial on the conspiracy charge has held that appellant was not properly found guilty of the conspiracy. It follows that the basis for holding him liable *as a conspirator* for the substantive offenses of the occupants of room 417 has been removed. ▮ If not properly convicted of being a conspirator how can he be held liable for the acts of others performed as a part of the alleged conspiracy? We conclude that the order denying appellant a new trial on Counts 2, 3 and 4 of the joint indictment should be reversed.

▮ Appellant argues that the evidence is not sufficient to support his convictions of the offenses charged in the separate indictment. What is set out above is sufficient to support the jury's finding that appellant was the occupant of rooms 306-307. Miller's testimony that he collected the rent from appellant, that he never collected it from anyone else, that appellant directed Miller to remove a partition and where the telephones should be placed, the fact that all persons calling on the telephone asked for "Abe" except one, whom appellant identified as his wife when she asked for "Curley Top," not to mention other details of evidence recited above, are ample to support such a finding. The fact that the tenant was listed as Roger Hill was only one fact to be considered by the jury in weighing this evidence and would not compel the jury to find that appellant was not the occupant or an occupant of these rooms.

The records found in these rooms were all in appellant's handwriting and they were the sort of records commonly kept of bets by bookmakers. Appellant points out that the expert on cross-examination admitted that because they did not show the names of bettors, they might be records of appellant's own bets, and that the large sheet which had been totaled might be a record of some other debits and credits than those of bettors. He also points out that not one of the persons who called these rooms on the telephone offered to place a bet or spoke of betting. The records and paraphernalia in room 307 however were of the kind commonly found in betting establishments, some of them were identified as records of bets on horse races and they were all in appellant's handwriting. ▮ This was certainly sufficient foundation to admit evidence of appellant's admissions, in view of the rule that slight or prima facie proof of the corpus delicti furnishes a sufficient basis for the introduction of evidence of such admissions. (*People* v. *Corrales*, 34 Cal.2d 426, 429 [210 P.2d

843] ; *People* v. *Mehaffey,* 32 Cal.2d 535, 545 [197 P.2d 12].)
The defendant admitted to the officers that the rooms were used for bookmaking, although he claimed that they were so used only by one Hill. He admitted specifically: ''and I said, well, Fox, this is a bookmaking operation, isn't it— and I said this particular writing on this pad is a losing bet on a horse race, is it not; and he said yes, this is a bookmaking operation, and he said that is a losing bet on a horse race, but he said I didn't record it . . . I didn't record any of the bets.''

These admissions coupled with the proof that all of the records of bets found in room 307 were in appellant's handwriting, taken with the other evidence fully support the jury's verdicts on the separate indictment. ■ It was not necessary to show that appellant was informed of his constitutional rights before he made the admissions. (*People* v. *Landry,* 106 Cal.App.2d 8, 11 [234 P.2d 736].)

■ Appellant complains of the court allowing Inspector Overstreet to testify, over objection, to having arrested appellant in 1946 in a bookmaking establishment at which time appellant made the same explanation, that he was only a bettor and not the bookmaker. This was admitted under the rule that former crimes may be proved to show common plan or design. (*People* v. *Moorhead,* 104 Cal.App.2d 688, 695 [232 P.2d 268] ; *People* v. *Henderson,* 79 Cal.App.2d 94, 119 [179 P.2d 406].) It was stipulated that the charge following this previous arrest was dismissed. ■ However it has been held that if the evidence is otherwise admissible the fact that the defendant has been acquitted of the previous charge (*People* v. *Lachuk,* 5 Cal.App.2d 729, 731-732 [43 P.2d 579] ; *People* v. *Spahn,* 28 Cal.App.2d 294, 297 [82 P.2d 474]) or the previous charge dismissed (*People* v. *Raleigh,* 83 Cal.App.2d 435, 442-443 [189 P.2d 70]) does not require its exclusion, ''although the force of the evidence may be thereby weakened'' (*People* v. *Follette,* 74 Cal.App. 178, 212 [240 P. 502]).

■ A stenographer who took down a statement made by appellant was permitted to testify from her stenographic notes that appellant to a question: ''Did you make any bets today?'' answered: ''No,'' and further stated in answer to questions that he said he had answered two phone calls, that the persons calling asked for Hill, that they wanted to make bets and that appellant refused to record them. It developed that Miss Saline had transcribed her notes and appellant's counsel

demanded to· see the transcription. The trial court refused to compel this. If this was error (see Code Civ. Proc., § 2047) the statements read were only. cumulative of previous testimony and added little to the evidence, and no prejudice appears. Appellant also makes certain claims of error in connection with the testimony of Peruzzo. Since Peruzzo's testi- and since we are· reversing as to those these points need not mony was directed to the charges made in the joint indictment be discussed. · This is equally true of the complaints about the witness Wenberg.

 It was not prejudicial error for the court to fail to give, on its own motion, an instruction that appellant's admissions should not be considered without first finding from other evidence the existence of the corpus delicti. (*People v. Simon*, 107 Cal.App.2d 105, 122-123 [236 P.2d 855].)

 The failure to give an instruction in the language of Penal Code, section 20, was not prejudicial error. No such instruction was requested and the court in several instructions stressed the necessity of intent as an element of the crimes charged.

 The appellant with justice complains of the misconduct of the prosecuting attorney. He insinuated by questions that appellant had connections with Artie Samish and his lieutenant, Frank X. (Porky) Flynn; that appellant had refused to testify before the Kefauver Committee and the State Crime Commission and that one witness knew from his connection with this State Commission that appellant was connected with bookmaking at Olmo Stables in San Mateo County. He also referred in argument to telephone records which had not been introduced into evidence and suggested that the "X" on a betting record might well refer to Frank X. Flynn. This conduct was inexcusable and indefensible and in a close case would justify a reversal, but appellate courts are required to leave to censure alone such conduct, however flagrant, where it does not appear to have resulted in a miscarriage of justice. Unfortunately such censure without reversal seems to be regarded by prosecutors who do not seriously enough regard their duties as invitation to repeat the same sort of conduct in later cases. Such excesses are to be deplored and prosecutors should not wilfully compel courts to resort to article VI, section 4½ of the Constitution to save them from the consequences of their reckless disregard of the fundamental rights of defendants. However on this record we can find no prejudice.

The order denying motion for new trial on Counts 2, 3 and 4 of Indictment No. 46039 ·is reversed with directions to the trial court to grant such motion. The judgments and order denying new trial on Indictment No. 46042 are affirmed.

Nourse, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied July 30, 1954, and appellant's petition for a hearing by the Supreme Court was denied August 10, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.