[Crim. No. 7861.   Second Dist., Div. Three.   Mar. 20, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WATSON CHILDS, Defendant and Appellant.

G. Vernon Brumbaugh and Russell E. Parsons for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Appellant was accused by information with one count of bookmaking, one count of unlawfully keeping and occupying a house for the purpose of recording and registering bets on horse races, and one count of having recorded and registered a bet or bets on horse races. To these charges appellant pleaded not guilty.

At the time of trial the matter was submitted for decision on the testimony contained in the transcript of the proceedings had at the preliminary hearing, subject to the usual stipulations and to all legal objections by appellant. The People introduced no further evidence, appellant testified in his own behalf and in a nonjury trial was found guilty as to all counts. He now appeals from the judgment (order granting probation) and from an order denying his motion for a new trial.

On February 22, 1961, Officer Richard W. Atwater of the Los Angeles Police Department, a qualified expert as to bookmaking activities, was told by a fellow officer that a telephone call had been received from an anonymous party who had stated that "by dialing PLeasant 3-2801 I would be able to place a wager on horses running at various tracks throughout the U.S.A.; and that upon calling, I would first be greeted by a female voice, and then the phone would be turned over to a male voice." Other officers in the department checked with the telephone company and ascertained that the phone was listed to Miss Irma Milner at 7021 South Denver in Los Angeles.

On the afternoon of February 22, 1961, Atwater and his fellow deputies went to the vicinity of the suspect address. The deputies kept the front and rear entrances to that place under surveillance. Atwater stationed himself in a phone booth about three doors away and located in a service station lot. He dialed PLeasant 3-2801. A female voice answered. Atwater said, "This is Dick for Joe." The female voice stated, "Just a moment," and at that time a male voice came on the line. Atwater then attempted to place a wager but was unsuccessful. He returned to the other deputies and related what

had just occurred. The officers thereupon proceeded toward the suspect address for the purpose of interviewing the occupants and to determine if the telephone was located therein. They had no warrant of arrest or search warrant.

When the officers were about 20 feet south of the front porch Atwater observed appellant coming out of the front door and onto the small porch. In his left hand appellant had what appeared to be a copy of the National Daily Reporter, some small slips of paper and a small covered white box. Atwater recognized appellant from previous contacts and shouted to his fellow officers, ''Well, there's Childs. That's our boy.''

Appellant turned his head toward the officers, one of the deputies called out, ''Police officers. Stay right there,'' and appellant thereupon turned and ran back into the front of the house. The officers pursued him through the house and into a rear bedroom, where he was caught in the act of throwing the box and papers in the direction of the bed. This box and the papers were introduced into evidence over defendant's objection as People's exhibits 1 through 4.

In Atwater's expert opinion the papers constituting exhibit 1 are professional type betting markers with ink notations constituting wagers on horses running at various tracks throughout the United States on February 22, 1961. He stated that People's exhibit 2 constituted professional type betting markers. Exhibit 3 is a National Daily Reporter and exhibit 4 is a ''parlay manual'' which enables one to make a quick computation as to what a first mutuel will pay on a second mutuel, etc. All of the exhibits constituted paraphernalia commonly used in bookmaking activities in the Los Angeles vicinity.

The officers discovered two telephones on the premises. Atwater verified the fact that one of the phones was listed as PLeasant 3-2801 and that it rang when such a number was dialed. The officers also found a woman by the name of Irma Sutler and a small boy in the house.

Atwater had a conversation with appellant regarding the exhibits and during the course of this conversation appellant admitted: that he had personally made the penciled notations appearing on the inside portion of the National Daily Reporter; that he had made the penned notations on People's exhibit 1, the betting markers; the PLeasant 3-2801 number was the only telephone that received any ''action''; the other phone was the private telephone of the people who lived there,

and that they had nothing to do with his operation; he had been at this address for about three weeks; he was not taking any "straight-in action"; he did not know who he was taking the action for; that he did not know if they were "phone spots" or "walk-ins," or what; all he knew was that they were "books" and he was getting 20 dollars a week for keeping the records for five such persons.

According to the expert testimony, appellant was apparently operating what is referred to as a "back office." This is an operation wherein the operator accepts recordations of wagers from a temporary location and makes a permanent recordation of the wagers on a piece of paper so that these can later be checked and returned to the agent.

The defendant testified on his own behalf and contradicted the officers' testimony at all material points. He also denied all the alleged admissions and proclaimed his innocence.

He now challenges the judgment of the lower court contending (1) the admissions were improperly admitted into evidence before the corpus delicti of the crime had been established, and (2) the exhibits introduced by the People were obtained by an unlawful search and seizure and aside from such illegally obtained evidence there is insufficient evidence to support the judgment of conviction. These contentions are without merit.

In order to establish the corpus delicti all that is necessary is prima facie proof, and such may be reached by inferences drawn from the facts or circumstances shown in evidence. (*People* v. *Bradford,* 95 Cal.App.2d 372, 379 [213 P.2d 37].)

Without regard to the extrajudicial statements of appellant, the evidence recounted above demonstrates that at the time of his arrest defendant was in possession of all the paraphernalia necessary to perpetrate the crime of bookmaking. The papers found in his possession and the testimony of the officers concerning their customary use established the fact that someone had recorded bets on horse races scheduled for that day. Further, the above recited evidence was sufficient as a prima facie showing of appellant's occupancy for these illegal purposes. Thus, exclusive of appellant's admissions, proper inferences could be drawn to establish the corpus delicti. (*People* v. *Fox,* 126 Cal.App.2d 560, 568-569 [272 P.2d 832]; *People* v. *Koerts,* 58 Cal.App.2d 9, 11 [135 P.2d 614].)

The anonymous telephone call; the receipt of Atwater's call by a woman, the shifting of the call, and the response in a

male voice, the emergence of defendant from the house carrying the National Daily Reporter, his flight when told to halt, were ample to establish probable cause for the arrest and search. (*People* v. *Fischer*, 49 Cal.2d 442 [317 P.2d 967].)

The judgment and order are affirmed.

Ford, J., and Files, J., concurred.